IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

| | |
|---|---|
| JIMMY ARNOLD | ) FOR PUBLICATION |
| | ) |
| | ) FILED: NOVEMBER 10, 1997 |
| Petitioner | ) |
| | ) DAVIDSON COUNTY |
| v. | ) |
| | ) HON. C. ALLEN HIGH, |
| | ) Chancellor and |
| TENNESSEE BOARD OF PAROLES, | ) HON. ELLEN HOBBS LYLE, |
| et al. | ) Chancellor |
| | ) |
| | ) NO. 01-S-01-9610-CH-00210 |
| Respondents | ) |

_____

| | |
|---|---|
| ANTHONY EVANS | ) |
| | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) |
| | ) |
| | ) HON. ELLEN HOBBS LYLE, |
| TENNESSEE BOARD OF PAROLES, | ) Chancellor |
| et al. | ) |
| | ) |
| | ) |
| Respondents | ) |

**FILED**

**November 10, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

DAVIDSON COUNTY

For Petitioner Arnold:_____     For Respondents:

JIMMY ARNOLD                             JOHN KNOX WALKUP
Pro se                                   Attorney General and Reporter

                                         MICHAEL E. MOORE
                                         Solicitor General

                                         MERRILYN FEIRMAN
                                         Assistant Attorney General
                                         Nashville, TN

For Petitioner Evans:_____     For Respondents:

ANTHONY EVANS                            JOHN KNOX WALKUP
Pro se                                   Attorney General and Reporter

                                         MICHAEL E. MOORE
                                         Solicitor General

                                         PATRICIA C. KUSSMAN
                                         Assistant Attorney General
                                         Nashville, TN

OPINION

AS TO ARNOLD:  AFFIRMED                                    BIRCH, J.
AS TO EVANS:   AFFIRMED IN PART, REVERSED IN PART

Jimmy Arnold and Anthony Evans, both serving sentences in the Department of Correction, filed individual petitions for the common law writ of certiorari in the Chancery Court for Davidson County. Each petitioner contended that in reviewing his file for parole the Board of Paroles (Board) failed to hold an open meeting as required by the Open Meetings Act, Tenn. Code Ann. § 8-44-101 et seq. (1993)[1] Further, each petitioner challenged the substantive basis for the Board's decision denying parole.[2]

The trial court dismissed each petition for failure to state a claim upon which relief may be granted, and the Court of Appeals affirmed the trial court's judgment. We granted the petitioners' applications for permission to appeal and consolidated the cases.

The petitioners assert that the procedure utilized by the Board to make parole decisions[3] violates the Open Meetings Act. Under this procedure, each Board member separately and independently reviews the cases before the Board. Each case file is circulated, in turn, to each of the Board members. A member formulates his or

---

[1]Any action taken in violation of the Act is void. Tenn. Code Ann. § 8-44-105 (1993).

[2]Petitioners contend that the Board relied on the following "illegal and unconstitutional" factors to deny them parole: seriousness of the offense, risk to re-offend, number of victims, completion of the sex offender treatment program (Petitioner Arnold only), and continued participation in Alcoholics Anonymous (Petitioner Evans only).

[3]Official parole decisions include the decision to grant, deny, revoke, or rescind parole. See Tenn. Code Ann. § 40-28-105(d) (1990).

her decision without conferring with any other member, relying solely on the record compiled by the hearing officer.

Because the Board is not required by its enabling statute to meet in order to consider parole decisions, we conclude that the above-described procedure utilized by the Board to make parole decisions is not subject to the Open Meetings Act. We further find that the Board properly denied each petitioner parole. Finally, we hold that the trial court erred in dismissing Evans' claim for injunctive relief as to the Board's requirement that he continue to participate in Alcoholics Anonymous. As to Arnold, we affirm the judgment of the Court of Appeals. As to Evans, we affirm the judgment of the Court of Appeals in part and reverse in part.

I

The initial step in the parole decision process is a hearing before a designated member of the Board or a hearing officer. A hearing was held in each case under review to determine whether the petitioner should be released on parole. As to Arnold, the hearing officer recommended that parole be denied because of the seriousness of the offense and so that Arnold could "continue with aftercare."[4] The hearing officer's recommendation and Arnold's file were then circulated among the members of the Board. The Board members reviewed Arnold's case individually; there is no evidence that Board members conferred with one another about Arnold's case.

---

[4]The "aftercare" referred to is apparently the sex offender treatment program.

3

Rather, each member separately reviewed the file and indicated in writing his or her adoption or modification of the hearing officer's recommendation. All four members who reviewed Arnold's case concurred with the recommendation of the hearing officer to deny parole.[5]

As to Evans, the hearing officer recommended denial of parole because of the seriousness of his offense, because of his high risk to re-offend, and so that Evans could continue to participate in the alcohol treatment program. The hearing officer's recommendation and Evans' file were then circulated among members of the Board. The five members of the Board who reviewed Evans' case concurred with the hearing officer's recommendation to deny parole. Three members cited additional reasons for denying parole. The Board utilized the same procedure to reach its decision in Evans' case as it did in Arnold's case.

II

Under the common law writ of certiorari, the decisions of the Board are reviewable to determine whether the Board exceeded its jurisdiction, or acted illegally, fraudulently, or arbitrarily.

---

[5]Arnold also requested an appeal hearing before the Board, citing "significant new information" that was not available at the initial parole hearing. The "new" information was a stipulation in <u>Dean v. McWherter</u>, 1:90-0027 (M.D. Tenn. filed August 18, 1994). According to Arnold, the stipulation prohibited the Board from denying him parole because he had not yet completed the sex offender treatment program. Arnold also contended that the hearing officer had engaged in misconduct by failing to obtain a medical evaluation to determine whether Arnold posed a threat if released. The Board denied Arnold's request.

<u>Powell v. Parole Eligibility Review Bd.</u>, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). However, the correctness of the Board's decision is not reviewable under the writ. <u>State ex rel. McMorrough v. Hunt</u>, 137 Tenn. 243, 192 S.W. 931, 933 (1917).

Pursuant to the Open Meetings Act, "[t]he policy of this state [is] that the formation of public policy and decisions is public business and shall not be conducted in secret." Tenn. Code Ann. § 8-44-101. Tennessee Code Annotated § 8-44-102(a) requires that all meetings of any governing body be public.[6] The Open Meetings Act defines a meeting as "the convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter." Tenn. Code Ann. § 8-44-102(b)(2).

Yet, the Board's enabling statute does not require a meeting in order to deliberate or make parole decisions. Tennessee Code Annotated § 40-28-105 (1990) provides in pertinent part:

> (b) The board shall prescribe the times and places of its meetings and shall schedule hearings at each correctional institution or facility at such times as may be necessary to discharge its duties. All votes taken by the board shall be by public ballot or public roll call. No secret ballots or secret roll calls shall be permitted.
>
> . . . .
>
> (d) A majority of members of the board shall constitute a quorum for

---

[6]The Board concedes that it is a "governing body" within the meaning of the statute and thus subject to the Act.

official administrative business. The chairman of the board may designate individual parole board members and appoint hearing officers who shall be authorized to conduct hearings, take testimony and make proposed findings of fact and recommendations to the board regarding a grant, denial, revocation, or rescission of parole. <u>Such findings and recommendations shall be reduced to writing and reviewed by board members who shall adopt, modify, or reject the recommendations</u>. No person shall be paroled nor shall the parole of any person be denied, revoked, or rescinded without the concurrence of three (3) board members. . . . (emphasis added)

We discern nothing in subsections (b) or (d) that requires the Board to meet and deliberate prior to making a parole decision. Subsection (b) simply requires that the Board "prescribe" the times and places of its meetings. In other words, when the Board does meet, proper notice of the meeting is required. A "public ballot" denotes a written document such as was used to deny the petitioners parole; "public roll call" describes a process commonly used at a public meeting where Board members would indicate their vote verbally. In our view, the document on which the Board members indicated their adoption, modification, or rejection of the hearing officer's recommendation, is a matter of public record and, as such, is sufficient to constitute a "public ballot." Similarly, subsection (d) does not require Board members to meet, confer, or deliberate on parole decisions. Rather, Board members are simply required to review the findings and recommendations and adopt, modify, or reject them.

6

Further, a review of the prior versions of this statute confirms that the legislature has eliminated the requirement that the Board meet and deliberate prior to making a parole decision. By eliminating the requirement that the Board meet and deliberate, the legislature has clearly demonstrated its intent to exempt from the Open Meetings Act the Board's procedure for making parole decisions. The 1975 version of this statute plainly required the Board to meet in order to make parole decisions:

> The board shall meet . . . for a full study of the cases of all prisoners eligible for release on parole, and for determining when and under what conditions and to whom such parole may be granted. . . . A majority of the board shall constitute a quorum for the transaction of all business.

Tenn. Code Ann. § 40-3602 (1975). In 1979, the statute was amended to provide that:

> Three (3) members of the board shall constitute a quorum for the transaction of official business and, except as hereinafter provided, a majority vote of those present at any meeting shall be sufficient for any action taken by the board. In cases of the granting of parole, the chairman of the board may designate its members to sit in panels of two (2) members, which panels shall have authority to conduct hearings and take testimony and to make proposed findings of fact and recommendations to the full board regarding the disposition of a request to grant parole. . . . No person shall be paroled or discharged from parole nor the parole of any person revoked, except by a majority vote of the entire membership of the board.

7

Tenn. Code Ann. § 40-3602(d) (Supp. 1980)(emphasis added).  In 1981,

the legislature further amended the statute and deleted any mention

of a meeting:

> (d) Three (3) members of the board shall constitute a quorum for the transaction of official business, and no person shall be paroled or discharged from parole, nor the parole of any person revoked, except by majority vote of the entire membership of the board.  The chairman of the board may designate its members to sit in panels of two (2) members . . . to conduct hearings . . . and make proposed findings of fact and recommendations to the full board . . . .  Such findings and recommendations shall be reduced to writing and reviewed by the full board which shall adopt or reject the panel's findings by majority vote.

Tenn. Code Ann. 40-3602(d) (Supp. 1981)(emphasis added).  In 1988,

the statute was amended to include the language of the present

version.  See Public Act of 1988, Ch. 880, § 3 (findings and

recommendations from hearing are to be reviewed by "other board

members" and a decision made upon the "concurrence" of three Board

members).[7]  Finally, in 1989, the statute was amended to provide

that the three member quorum requirement applied only to "official

administrative business."  See Public Acts of 1989, Ch. 227, § 8

(emphasis added).

In amending this statute over the years, the legislature

has, in our view, purposely eliminated language that required the

---

[7]Thus by 1988, the Board was authorized to make parole decisions upon the concurrence of three members--a significantly different procedure from the 1980 version that required a majority vote of the members present at the meeting.

Board to meet in order to make parole decisions. Further, these amendments establish that the Board's practice of submitting the hearing officer's recommendations in writing to each Board member individually is consistent with the legislative intent, for we must assume that the legislature acted with full cognizance of the Open Meetings Act.

The petitioners also rely on the Open Parole Hearings Act, Tenn. Code Ann. § 40-28-501 et seq. (1996 Supp.) as support for their contention that the Board is required to meet and deliberate prior to making a parole decision. However, this statute requires that parole hearings be public. Tennessee Code Annotated § 40-28-105(b) explicitly differentiates between meetings and hearings; we distinguish "parole decision" from "parole hearing." Thus, Tenn. Code Ann. § 40-28-502 does not apply to parole decisions.

In sum, because the Board's enabling statute does not require that parole decisions be made by meeting, the Open Meetings Act does not apply to the Board's procedure for making parole decisions. The legislative history of the Board's enabling statute illustrates the legislature's intent to so exempt the Board's decision-making process from the Open Meetings Act. Therefore, the Board's procedure of separate and independent review of cases by Board members neither transgresses the intent of the legislature nor offends the statute.

Petitioners also contend that the Board relied upon certain "illegal and unconstitutional" factors in denying parole, specifically, the seriousness of the offense, the risk to re-offend, the number of victims, completion of the sex offender treatment program,[8] and continued participation in Alcoholics Anonymous.[9]

Release on parole is a privilege, not a right. Tenn. Code Ann. § 40-35-503(b) (Supp. 1996). The statute expressly requires the Board to consider the seriousness of the offense and the inmate's risk to re-offend. Tenn. Code Ann. § 40-35-503(b)(1) and (2). Contrary to the petitioners' contention, consideration of the seriousness of the offense at both sentencing and parole does not violate double jeopardy principles because denial of parole does not constitute "another" punishment, but rather perpetuates a validly imposed sentence. See Kelly v. United States Parole Comm'n, 26 F.3d 1016, 1020 (10th Cir. 1994); Averhart v. Tutsie, 618 F.2d 479, 483 (7th Cir. 1980). Further, the Board is not required to define with exactitude the weight accorded the seriousness of the offense in denying parole. See Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 99 S. Ct. 2100, 2104, 60 L. Ed.2d 668 (1979). Consideration of the number of victims is logically related to the seriousness of the offense.

---

[8]This factor applies only to Petitioner Arnold.

[9]This factor applies only to Petitioner Evans.

In our view, consideration of the seriousness of the offense, the number of victims, and the risk to re-offend is appropriate to the parole decision. Consideration of these factors does not demonstrate that the Board acted illegally, fraudulently, arbitrarily, or in excess of its jurisdiction. Moreover, consideration of such factors does not implicate any constitutional right under the circumstances.

As stated, Arnold contends that the Board illegally denied him parole because he had not completed the sex offender treatment program.[10] We disagree. It is unclear whether Arnold was committed to custody prior to the institution of this treatment program. Even assuming he was committed prior to the establishment of the program, the Board is still permitted to recommend the program to sex offenders. Because the Board also properly relied upon the seriousness of the offense to deny Arnold parole, we do not find that the Board's recommendation that he continue treatment supports a claim that the Board acted illegally or arbitrarily or in excess of its jurisdiction in denying Arnold parole.[11]

---

[10] In <u>Dean v. McWherter</u>, No. 1:90-0027 (M.D. Tenn. filed August 18, 1994), the State agreed that only those sex offenders committed to custody after the sex offender treatment program was instituted would be required to complete that program as a precondition for release on parole. There is no indication in the record that the State has failed to comply with this stipulation.

[11] In a related claim, Arnold contends that Tenn. Code Ann. § 40-28-116(a)(2) entitles him to a psychological evaluation. However, this statute restricts the Board's discretion to parole sex offenders; it does not grant such offenders the right to an evaluation.

As stated, Evans contends that the Board acted illegally by requiring him to continue his participation in an Alcoholics Anonymous ("AA") treatment program. Specifically, he urges that the AA program is a religious one and that required participation in it violates the Establishment Clause of the First Amendment to the United States Constitution.

In his verified petition, Evans states:

> Petitioner asserts that there is only one "alcohol program" available to him, and he is being coerced to participate in that program, as a condition of parole . . . .
>
> The "alcohol program" is administered by the Tennessee Department of Correction (TDOC), but the requirement [that] he continue [to] participate in the program as a condition of parole originates with the Board of Paroles. . . .
>
> . . . .
>
> The centerpiece of the program, as petitioner experiences it, is the twelve (12) steps of Alcoholic[s] Anonymous (AA) program/effort.
>
> The concept of a higher power is at the center of the twelve (12) steps.
>
> The twelve (12) steps explicitly deny that recovery from alcoholism is possible without reliance on a higher power.
>
> The emphasis on a higher power is also the central theme of the third edition of AA's basic text entitled "Alcoholics Anonymous" which is used as an all-purpose guide for anyone having difficulty in working the twelve (12) steps.

Group prayer is common at the meetings attended by petitioner. The meetings open with the "Serenity Prayer," essentially non-denominational, and close with "The Lord's Prayer", a Christian prayer.

The First Amendment to the United States Constitution guarantees that "government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" Lee v. Weisman, 505 U.S. 577, 587, 112 S. Ct. 2649, 2655, 120 L. Ed.2d 467 (1992)(quoting Lynch v. Donnelly, 465 U.S. 668, 678, 104 S. Ct. 1355, 1361-62, 79 L. Ed.2d 604 (1984)). In Everson v. Board of Educ., the Supreme Court held:

[t]he "establishment of religion" clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or nonattendance.

Everson v. Board of Educ., 330 U.S. 1, 15-16, 67 S. Ct. 504, 511, 91 L. Ed.2d 711 (1947). While the Supreme Court has wrestled with questions of whether a certain policy or practice favors or establishes a religion, there is no debate that a government policy that requires participation in a religious activity violates the Establishment Clause:

13

> it [is] "beyond dispute" that the
> Constitution guarantees that the
> government may not coerce anyone to
> support or participate in religion or
> its exercise. Individuals may
> disagree in a particular case over
> other issues, such as whether it is
> the state who acted, or whether
> coercion is present, or whether
> religion or something else is the aim
> of the coercion. But in general, a
> coercion-based claim indisputably
> raises an Establishment Clause
> question.

Kerr v. Farrey, 95 F.3d 472, 479 (7th Cir. 1996) (quoting Lee v. Weisman, 5 U.S. at 587, 112 S. Ct. at 2655). In Kerr, the Seventh Circuit Court of Appeals held that the Establishment Clause was violated by a requirement that an inmate observe Narcotics Anonymous ("NA") meetings (NA and AA utilize the same treatment philosophy for different types of addictions). Id. at 480. Other courts have reached like conclusions. See Warner v. Orange County Dept. of Probation, 827 F. Supp. 261 (S.D.N.Y. 1993); Griffin v. Coughlin, 673 N.E.2d 98 (N.Y. 1996).

We find that there are sufficient reasons other than the requirement of continued alcohol treatment to justify the denial of parole by the Board. However, in addition to his claim that the Board illegally denied him parole, Evans also requested prospective injunctive relief to ensure that future parole decisions do not consider an inmate's participation or nonparticipation in the AA program. In this regard, Evans has stated a claim upon which relief may be granted; therefore, the trial court erred in dismissing the petition as to this claim.

14

If, on remand, the trial court finds that the treatment program at issue is a religious one and that there are no alternative secular treatment programs offered, then to require a prisoner to attend or participate in such a treatment program would constitute a violation of the Establishment Clause. Attending or failing to attend such religious meetings can not be considered in a decision whether to grant or deny parole.

Accordingly, we reverse the judgment of the Court of Appeals as to Petitioner Evans' claim for injunctive relief and remand this cause to the trial court for further proceedings consistent with this opinion. The judgment of the Court of Appeals as to Petitioner Arnold is affirmed in all respects. The judgment of the Court of Appeals as to Petitioner Evans is affirmed in part and reversed and remanded in part. That portion of the costs of this cause as are attributable to Petitioner Arnold are taxed to Arnold. That portion of the costs of this cause as are attributable to Evans are taxed to the respondent.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:

Anderson, CJ.
Drowota, Reid, Holder, JJ.

15