IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
ASSIGNED ON BRIEFS MAY 24, 2001

## DAVID NEVILLS v. SOUTH CENTRAL CORRECTIONAL DISCIPLINARY BOARD

**Direct Appeal from the Chancery Court for Wayne County**
**No. 10490; The Honorable Robert L. Holloway, Chancellor**

-----

**No. M2000-02324-COA-R3-CV - Filed September 25, 2001**

-----

This appeal involves the denial of a petition for writ of certiorari brought in chancery court by a state prisoner. The prisoner requested review of actions allegedly in violation of due process taken by a prison disciplinary review board. The chancery court granted a motion for summary judgment in favor of the disciplinary review board and for the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

David Nevills, Clifton, TN, *pro se*

Tom Anderson, Jackson, TN, for Appellee

**OPINION**

**Facts and Procedural History**

Appellant, David Nevills, is an inmate in the lawful custody of the Tennessee Department of Corrections ("TDOC") and incarcerated at the South Central Correctional Facility ("South Central") in Clifton, Tennessee. South Central is operated by Corrections Corporation of America ("CCA"), a private entity under contract with TDOC to manage the facility.

On June 2, 1999, Mr. Nevills was charged with conduct in violation of Tennessee Department of Corrections Policy #9502.01.VI(E)(4)(a), otherwise known as "Solicitation of Staff." Following the charges, Mr. Nevills was placed in segregation for two days prior to a hearing before South Central's Disciplinary Board. During his time in segregation, Mr. Nevills alleges that he

asked for a continuance of his disciplinary hearing for the opportunity to request exculpatory witnesses and to confer with an inmate advisor. After having this request for continuance denied, the Board conducted a hearing. As a result of the hearing, the Board made a recommendation to a TDOC liaison that Mr. Nevills be found guilty of the alleged infraction. Consequently, the TDOC liaison approved the recommendation and convicted Mr. Nevills of the offense.

Following his conviction, Mr. Nevills properly followed the policies established by TDOC for appealing disciplinary convictions. However, on June 14, 1999, Jim Rose, Assistant Commissioner with TDOC, affirmed the conviction. Subsequently, the Commissioner of Corrections, Donal Campbell, also affirmed the conviction.

On August 13, 1999, Mr. Nevills petitioned the Chancery Court of Wayne County for a common-law and statutory writ of certiorari, naming the Board as respondent, to review the actions taken by the Board. The Board, led by Chairman Leo V. Schachle, filed an answer and, subsequently, a motion for summary judgment alleging that the Board was not the proper respondent in the matter. The chancery court granted the motion for summary judgment and this appeal followed.

## Standard of Review

The chancery court's grant of summary judgment is not entitled to a presumption of correctness on appeal. McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 894 (Tenn. 1996). Rather we must review *de novo* to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. Mason v. Seaton, 942 S.W.2d 470,472 (Tenn. 1997). A summary judgment is warranted only when there are no genuine, material factual disputes with regard to the claim or defense asserted in the motion and the moving party is entitled to a judgment as a matter of law. Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). In making our determination, we must take the strongest view of the evidence in favor of the nonmoving party, allowing all reasonable inferences in his favor and discarding all countervailing evidence. Shadrick v. Coker, 963 S.W.2d 726, 731 (Tenn. 1998) (citing Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993)).

## Law and Analysis

Although Mr. Nevills' *pro se* appeal failed to specifically define the issues presented before this court, the following two issues pertaining to his claim that he is entitled to a writ of certiorari should be addressed:

1. Whether Mr. Nevills named the correct respondent in his petition for a writ of certiorari; and

2.     Whether the protections afforded by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution are implicated under these circumstances, warranting issuance of a common-law or statutory writ of certiorari.

We will address each issue accordingly.

With regard to the first issue, we agree with the chancery court and hold that Mr. Nevills failed to name the correct respondent in his petition for writ of certiorari.  The Tennessee Supreme Court has held that the Board at South Central has no authority to convict or impose sanctions upon prisoners for violations of disciplinary rules.  Mandela v. Campbell, 978 S.W.2d 531, 533 (Tenn. 1998).  In arriving at its conclusion in Mandela, the supreme court recognized that section 41-24-110(5) of Tennessee Code Annotated provides in pertinent part:

> No contract for correctional services shall authorize, allow or imply a delegation of the authority or responsibility of the commissioner to a prisoner contractor for any of the following: . . . granting, denying or revoking sentence credits; placing an inmate under less restrictive custody or more restrictive custody; or taking any disciplinary actions.

Id. (citing Tenn. Code Ann. § 41-24-110(5)).  While the Board was properly considered a contractor as contemplated in the statute, the supreme court ruled that TDOC had not improperly delegated its authority.   Under the policies in place at South Central, the court found that the authority to convict and impose sanctions upon prisoners remained with TDOC.  Id.; see also Davis v. Rose, No 01A01-9610-CH-00494, 1997 WL 83617, *2-3 (Tenn. Ct. App. Feb. 28, 1997).  The Board would merely recommend punishment based on the Board's findings and an authorized TDOC representative would either accept or amend the Board's recommendations after their own review.

Based on Mandela, this Court has concluded numerous times that writs of certiorari stemming from alleged violations of rights of prisoners at South Central during disciplinary hearings must be directed towards TDOC as opposed to the Board or its members.[1]  Turner v. Campbell, 15 S.W.3d 466, 468 (Tenn. Ct. App. 1999); see also Wilson v. S. Cent. Corr. Facility Disciplinary Bd., No. M2000-00303-COA-RM-CV, 2000 WL 1425228, at *5-6 (Tenn. Ct. App. Sept. 28, 2000); Buford v. Tenn. Dep't of Corr., No. M1998-00157-COA-R3-CV, 1999 WL 1015672, at *5 (Tenn. Ct. App. Nov. 10, 1999).  As aptly stated by the Honorable Ben Cantrell of this Court, a writ of certiorari "should be directed to the governmental agency that is responsible for the actions of which the petitioner complains." Turner, 14, S.W.3d at 468.  Because the Board has no authority to convict

---

[1]We are aware of decisions apparently contradicting the proposition that the only proper respondents for writs of certiorari to review prison disciplinary boards is TDOC. See e.g., Seals v. Bowlen, No. M1999-00997-COA-R3-CV, 2001 WL 840271, *3-5 (Tenn. Ct. App. July 26, 2001); however, in cases where other respondents, such as the disciplinary board itself, were held to be properly named in writs of certiorari, the prisons where the claims arose were state run rather than under contract with a private entity for management.  Thus, in such cases, people other than just a sole TDOC representative had authority to affect the liberty interests of prisoners.

or impose sanctions upon a prisoner, it necessarily follows that a writ of certiorari to review the Board's actions would not provide any relief from convictions or sanctions actually imposed upon the prisoner. TDOC is the appropriate governmental agency that should have been named as respondent.

In his brief, Mr. Nevills asserts that disputed facts exist which should have precluded the chancery court from granting a motion for summary judgment. Mr. Nevills states that he "had not been allowed or given [the] opportunity to discuss a defense with [his] inmate advisor, or the opportunity to request [the] presence of exculpatory witnesses." He further states that the Board arbitrarily denied his requested continuance. However, upon inspection, these facts, when taken as true, have no bearing on the propriety of the summary judgment. As discussed above, the Board was not in a position to deny Mr. Nevills his liberty interests.

Just as the Supreme Court of Tennessee recognized in Mandela, we too recognize the amount of involvement that the Board has in the disciplinary process at South Central. The Board's responsibilities include conducting hearings, reviewing the evidence, and making recommendations to TDOC for disciplinary action. However, we also cite with approval the Wilson court's acknowledgment of the following powers retained by the TDOC liaison throughout the entire disciplinary process at South Central:

> the authority to affirm or reject the segregation of any inmate pending disciplinary action; to approve (or disapprove) of any sanctions imposed on an inmate who pleads guilty to a disciplinary offense; to stay or suspend the implementation of any punishment for up to 60 days; to stay any punishment pending the results of an appeal; and together with the warden, to review and approve any confinement of an inmate in punitive segregation for more than 30 days.

Wilson, 2000 WL 1425228, at *3 (citations omitted). Further, we agree with the Wilson court that the TDOC liaison is not merely a "rubber stamp" in place only to approve actions taken by the Board. Id. Instead, the TDOC liaison has a duty to take an "active and decisive role in the disciplinary process." Id. Accordingly, where a TDOC liaison fails in these respects, the Board, as a composition of private employees, can create liability for the state. Thus, Mr. Nevills' petition for writ of certiorari improperly states the Board as respondent, as opposed to TDOC, and must fail for that reason. However, even if the Board were the correct respondent in Mr. Nevills' writ of certiorari, Mr. Nevills' appeal would still fail for the reasons below.

With regard to the second issue, we hold that Mr. Nevills fails to allege any facts regarding his conviction which would tend to show a deprivation of a liberty interest entitling him to protection under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. Accordingly,

the chancery court was not in error for failing to issue a common law or statutory writ of certiorari.[2]

It is well settled that the scope of review under the common law writ of certiorari is very narrow. Review under the writ is limited to whether "the inferior board or tribunal (1) has exceeded its jurisdiction, or (2) has acted illegally, arbitrarily, or fraudulently." McCallen v. City of Memphis, 786 S.W.2d 633, 638 (Tenn.1990); see also Powell v. Parole Eligibility Bd., 879 S.W.2d 871, 873 (Tenn.Ct.App.1994). The intrinsic correctness of the decision below can not be reviewed under the writ. Arnold v. Tennessee Bd. of Paroles, 956 S.W.2d 478 (Tenn.1997). As stated in Powell, "it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached." Powell, 879 S.W.2d at 873. A lower board or tribunal's decision is subject to judicial review under the common law writ of certiorari if the lower board or tribunal "acted in violation of constitutional or statutory provisions or in excess of its own statutory authority; has followed unlawful procedure or been guilty of arbitrary or capricious action; or has acted without material evidence to support its decision." Watts v. Civil Service Bd., 606 S.W.2d 274, 277 (Tenn. 1980).

Here, Mr. Nevills seeks review of the alleged denial of due process and not the final determination of his guilt. Mr. Nevills alleges that the Board violated his due process rights by arbitrarily denying a requested continuance of his disciplinary hearing, which resulted in an inability to request exculpatory witnesses and to confer with an inmate advisor. Further, Mr. Nevills claims the Board failed to adequately summarize the reasons for its findings as required by TDOC policy. Thus, because Mr. Nevils presents a claim that the Board violated his constitutional due process rights rather than a claim as to the intrinsic correctness of the decision, his claim could properly fall under the gambit of issues available for review under a common law writ of certiorari. However, upon analyzing Mr. Nevills' claim that he was denied due process of law, we find his argument without merit.

We must first address the necessary procedural requirements for a constitutionally adequate prison disciplinary hearing. The United States Supreme Court has held that a prisoner retains constitutional rights even upon incarceration. However, the "full panoply of rights" afforded defendants in criminal prosecutions does not extend to prisoners subject to disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Minimum constitutional requirements include (1) written notice of the charges at least twenty-four hours prior to the hearing; (2) an opportunity to present witnesses when doing so would not be unduly hazardous to institutional safety or correctional goals; (3) an impartial decisionmaker; and (4) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action. Id. at 564-66. An inmate does not have a right to either retained or appointed counsel. In situations where the inmate is illiterate or the issue is highly complex, however, the inmate may seek the aid of another inmate or receive aid from the staff. An inmate does not have a right to confrontation or cross-examination of witnesses.

---

[2] We need only discuss the merits regarding the issuance of a common law writ of certiorari in the matter before us. In Buford, this Court clearly held that statutory writs of certiorari are not available for review of proceedings taken by prison disciplinary boards. Buford, 1999 WL 1015672, at *4.

The Supreme Court later limited its holding in Wolff by finding that the imposition of certain disciplinary sanctions does not create a liberty interest entitling a prisoner to due process protections. An inmate is entitled to the limited due process rights provided in Wolff only when the resulting sanctions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 483-85 (1995).  Thus, Sandin focuses on the nature of the deprivation imposed upon the inmate. Courts have held that the following punishments do not create protected liberty interests under the Sandin standard: placement in ten day solitary confinement with loss of sentence reduction credits for that time, written and verbal warnings, and confiscation of personal property, Armstrong v. Tenn. Dep't of Corr., No. M2000-02328-COA-R3-CV, 2001 WL 618603 (Tenn. Ct. App. June 7, 2001); placement in thirty day segregated confinement, placement in five day segregated confinement suspended for sixty days, loss of six months of visitation privileges, and payment for a drug screen, Dotson v. TDOC, No. 01A01-9811-CV-00596, 1999 WL 430405, at *1 (Tenn.Ct.App. June 29, 1999); transfer to a more severe prison facility, Mack v. Jones, No. 03A01- 9806-CV-00215, 1999 WL 172645, at *3 (Tenn.Ct.App. Mar.24, 1999); removal from a prison job, Blackmon v. Campbell, No. 01A01-9807-CH-00361, 1999 WL 85518, at *1 (Tenn.Ct.App. Feb.23, 1999); and placement on lockdown, Hawkins v. Sundquist, No. 01A01-9803-CH-00164, 1999 WL 22386, at *1 (Tenn.Ct.App. Jan.21, 1999).

Here, Mr. Nevills has failed to allege, either at the trial or appellate level, that atypical and significant hardships in relation to the ordinary incidents of prison life were imposed upon him.  In Mr. Nevills' original complaint in chancery court, he requested reimbursement of a $5.00 "guilty fee."  Further, Mr. Nevills spent two days in segregation pending his hearing before the Board.  However, consistent with our prior opinions, these sanctions fall short of the imposition of atypical and significant hardships in relation to the ordinary incidents of prison life.  Thus, Mr. Nevills failed to show his liberty interests were at stake and that he was entitled to any of the limited due process rights provided to prisoners in Wolff.  Thus, denial of the writ of certiorari by the chancery court was proper.

## Conclusion

For the foregoing reasons, the decision of the chancery court is affirmed.  Costs of this appeal are taxed against the Appellant, David Nevills, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE