IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 1, 2019

## DEXTER LEE WILLIAMS v. TENNESSEE DEPARTMENT OF CORRECTION ET AL.

**Appeal from the Chancery Court for Hickman County**
**No. 16-CV-5755    Michael Binkley, Judge**

_____

### No. M2018-01375-COA-R3-CV

_____

Appellant, an inmate in the custody of the Tennessee Department of Correction, appeals the trial court's dismissal of his petition for common law writ of certiorari. Appellant raises several issues regarding violations of the Tennessee Department of Correction's uniform disciplinary procedures. The inmate was found guilty of refusal/attempt to alter a drug test. After exhausting his administrative appeals, he filed an application for a writ of certiorari in the trial court. The trial court granted the writ of certiorari, and on review of the record, dismissed Appellant's petition. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and W. NEAL MCBRAYER, JJ., joined.

Dexter Lee Williams, Pikeville, Tennessee, appellant, pro se.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, and Jennifer L. Brenner, Senior Assistant Attorney General, for the appellees, Tennessee Department of Correction, Commissioner, TN. Dept. of Correction, Debra Johnson, and D. Epley.

## OPINION

### I. Background

Appellant Dexter Lee Williams is an inmate in the custody of the Tennessee

Department of Correction ("TDOC"). According to his petition for common law writ of certiorari, on December 2, 2015, Mr. Williams was called to the institutional drug testing area for a drug screen "based upon a reasonable suspicion of drug usage." Mr. Williams was first searched by a prison employee, Officer Godwin, who then requested that Mr. Williams provide a urine sample for testing. Mr. Williams complied. Officer Godwin field tested the urine sample, which yielded a positive result for an "abnormal specific gravity." Officer Godwin then sent the sample to a laboratory for confirmation of the field test. The independent lab, US Diagnostics, confirmed that the field test did, in fact, show a low specific gravity level of 1.0003, a reading which indicated that the specimen had been diluted.

On December 8, 2015, Mr. Williams was cited with a disciplinary infraction for Refusal/Attempt to Alter a Drug Test. As reflected in the incident description, the infraction alleged that "confirmation was received that indicates that Inmate Williams did dilute his urine specimen. Inmate Williams is being charged with Altering Drug Screen." On January 12, 2016, a disciplinary hearing was conducted, at which time Mr. Williams was convicted of Refusal/Attempt to Alter a Drug Test.

After exhausting his administrative appeals, on April 15, 2016, Mr. Williams filed a petition for common law writ of certiorari in the Chancery Court for Hickman County ("trial court"). Mr. Williams filed an amended petition for common law writ of certiorari on December 27, 2016. Mr. Williams named TDOC; Derrick Scofield, the Commissioner of TDOC; Debra Johnson, Warden; and Sargent Daniel Epley, the Disciplinary Board Chairman (together with TDOC, Mr. Scofield, and Ms. Johnson, "Appellees"). In his petition, Mr. Williams alleged that the board's decision was arbitrary and illegal because: (1) there was no material evidence to support the board's decision; (2) the board refused to allow Mr. Williams to present the testimony of relevant witnesses; and (3) the board failed to state its reasons for the decision. Appellees did not oppose the trial court's granting of the petition for certiorari, and the record from the disciplinary proceedings was transmitted to the trial court for review by order of May 17, 2017. By order of July 6, 2018, the trial court dismissed Mr. Williams' petition for common law writ of certiorari finding that Mr. Williams' "[l]imited due process rights were not violated at the disciplinary hearing." He appeals.

## II. Issue

The sole issue for review is whether the trial court erred in dismissing Appellant's petition for common law writ of certiorari.

## III. Standard of Review

The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole

eligibility review boards, and other similar administrative tribunals. *See Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn. 2003); *Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (citing *Bishop v. Conley*, 894 S.W.2d 294 (Tenn. Crim. App.1994)). The issuance of a writ of common-law certiorari is not an adjudication of anything. *Keen v. Tenn. Dep't of Corr.*, No. M2007-00632-COA-R3-CV, 2008 WL 539059, at *2 (Tenn. Ct. App. Feb. 25, 2008) (citing *Gore v. Tenn. Dep't of Corr.*, 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003)). Instead, it is "simply an order to the lower tribunal to file the complete record of its proceedings so the trial court can determine whether the petitioner is entitled to relief." *Hawkins v. Tenn. Dep't of Corr.*, 127 S.W.3d 749, 757 (Tenn. Ct. App. 2002); *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001).

Review under a writ of certiorari is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily or fraudulently, and if there is any material evidence to support the board's findings. *Watts v. Civil Serv. Bd. of Columbia*, 606 S.W.2d 274, 276-77 (Tenn. 1980); *Davidson v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983); *Harding Acad. v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 222 S.W.3d 359, 363; (Tenn. 2007); *see also Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012). These determinations are issues of law. *Watts*, 606 S.W.2d at 277.

The Tennessee Supreme Court has held that the use of the common law writ of certiorari is appropriate to provide judicial relief from: (1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny parties their day in court; (4) decisions that are beyond the decision-maker's authority; and (5) decisions that involve plain and palpable abuses of discretion. *State v. Lane*, 254 S.W.3d 349, at 355 (Tenn. 2008) (quoting *Willis*, 113 S.W.3d at 712). A common law writ of certiorari proceeding does not empower the courts to re-determine the facts found by the entity whose decision is being reviewed. *Tennessee Waste Movers, Inc. v. Loudon Cnty.*, 160 S.W.3d 517, 520 n. 2 (Tenn. 2005); *Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987). Accordingly, we have repeatedly cautioned that a common-law writ of certiorari does not authorize a reviewing court to evaluate the intrinsic correctness of a governmental entity's decision. *See, e.g.*, *Willis*, 113 S.W.3d at 712; *Stewart*, 368 S.W.3d at 465; *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997). As previously stated by this Court:

> At the risk of oversimplification, one may say that it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached. If the agency or board has reached its decision in a constitutional or lawful manner, then the decision would not be subject to judicial review.

*Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). Accordingly, we consider Mr. Williams' arguments within these parameters. "A board's

determination is arbitrary and void if it is unsupported by any material evidence." ***Watts***, 606 S.W.2d at 276–77. Whether there existed material evidence to support the board's decision is a question of law that should be determined by the reviewing court based on the evidence submitted. ***Id***. This Court must review a trial court's conclusions of matters of law *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d). This Court "will not 'inquire into the intrinsic correctness of the [b]oard's decision,' but will uphold the decision if it was reached lawfully and in a constitutional manner***." Hopkins v. Tenn. Bd. of Paroles and Prob***., 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001).

## IV. Analysis

We are cognizant that Mr. Williams is a prison inmate and is proceeding *pro se*. The courts should take into account that many *pro se* litigants have no legal training and little familiarity with the judicial system. ***Garrard v. Tenn. Dep't of Corr***., No. M2013-01525-COA-R3-CV, 2014 WL 1887298, at *3 (Tenn. Ct. App. May 8, 2014) (internal citations omitted). It is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere." ***Brown v. Christian Bros. University***, No. W2012-01336-COA-R3-CV, 2013 WL 3982137, at *3 (Tenn. Ct. App. Aug. 5, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014). While a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, ***Hodges v. Tenn. Att'y Gen***., 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000), "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." ***Whitaker v. Whirlpool Corp***., 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000).

Furthermore, in disciplinary hearings, prisoners have only very limited due process rights. ***Wolff v. McDonnell***, 418 U.S. 539, 555 (1974) ("Prisoner disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due to a defendant in such a proceeding does not apply."). The minimum requirements for satisfaction of a prisoner's due process rights for a disciplinary hearing are satisfied if: (1) the prisoner receives notice of the charges; (2) the prisoner has the opportunity to be heard; and (3) the factfinders make a written statement concerning the evidence relied on and the reasons for the disciplinary action. ***Id***. at 563-69.

With the foregoing in mind, we turn to address each of Mr. Williams' assignments of error concerning his disciplinary hearing.

### A. Sufficient Material Evidence to Support the Board's Findings

Mr. Williams asserts that there was "no evidence" to support the board's determination that he diluted his urine specimen. Specifically, he argues that the certified disciplinary record was "totally devoid of any lab report or other confirmation." The TDOC TOMIS Disciplinary Report, which is included in the record, describes the evidence against Mr. Williams as follows:

On 12/2/2015 Inmate Dexter Williams. . . was given a drug test and field tested positive for abnormal specific gravity. His urine sample was sent to US Diagnostics Lab for testing. Confirmation was received that indicates that Inmate Williams did dilute his urine specimen. Inmate Williams is being charged with altering drug screen. Capt. David Breece was notified and approved.

The report indicates that it was prepared by Officer Steven Palk. Pursuant to TDOC Policy No. 502.01(IV)(I), which is included in the record, the prison disciplinary board only has to meet the "preponderance of the evidence" standard to convict Mr. Williams of the charged disciplinary offense. Preponderance of the evidence is defined, in the TDOC Policy, as "the amount of evidence necessary for a party to prevail at the disciplinary hearing," or "more probable than not."

Turning to the evidence, Officer Palk testified, in person, at the disciplinary hearing. In relevant part, Officer Palk stated that the specific gravity of Mr. Williams' urine sample was "less than 1.003." Specifically, Officer Palk testified that the lab report showed "that inmate's sample was diluted due to specific gravity and creatinine level being low which by policy these things are checked to see if dilution has occurred." At Mr. Williams' request, Officer Godwin and Officer Serna also testified at the hearing. On Mr. Williams' questioning, Officer Godwin testified that he remembered giving Mr. Williams the drug screen and that he did not see Mr. Williams alter or tamper with the sample.

Mr. Williams contends that because there are no lab results included in the disciplinary record, the board's decision to convict him was arbitrary. Although the lab results are not included, it is clear that Officer Godwin, who conducted the field test, was in possession of the lab results from US Diagnostics while giving testimony at the hearing. The "Description of Physical Evidence Introduced" section of the TDOC Disciplinary Report Hearing Summary, which is included in the record, indicates that the "Report and US Diagnostic Lab Report" were introduced at the hearing. Mr. Williams' inmate advisor, Christopher Crysler, also appears to have had a copy of the lab report at the hearing as he referenced it in his cross-examination of Officer Godwin. In view of the respective testimony of the officers involved in the events giving rise to the disciplinary action against Mr. Williams, we cannot conclude that the absence of the physical lab results was such a deviation from the Uniform Disciplinary Procedures as to have "effectively denied [Mr. Williams] a fair hearing." *Jeffries v. Tennessee Dep't of Corr*., 108 S.W.3d 862, 873 (Tenn. Ct. App. 2002).

Concerning the urine sample, Mr. Williams asserts that it was "illegal" for the board to render a finding of guilty based on a urine sample that had been diluted as indicated by low specific gravity or creatinine. We disagree. TDOC Policy No. 502.05(VI)(A)(54) states that attempting to alter a drug test is a punishable offense. The

Policy defines "Refusal of/or Attempt to Alter Test" as: "Refusal to provide an adequate breath or urine sample for a drug or alcohol screen upon request, refusal to sign any chain of custody forms, or attempting to change or modify documents, urine, or blood content for the purpose of creating false negative test results." Here, Mr. Williams was convicted of altering/diluting his urine sample to avoid detection of drugs. This is the precise offense contemplated under TDOC Policy No. 502.05 (VI)(A)(54).

Mr. Williams also argues that the board's "failure to follow recommendations by the laboratory constitutes a clear and palpable abuse of discretion." In making this argument, Mr. Williams relies on testing recommendations from Alere Laboratory. However, Alere Laboratory did not conduct the specimen testing in this case, and there is no indication that the initial field test was conducted using an Alere Laboratory test kit. Accordingly, any recommendations regarding Alere Laboratory testing or procedures are not relevant to Mr. Williams' case. Furthermore, Alere Laboratory recommendations were not made part of the disciplinary hearing record; accordingly, Mr. Williams cannot rely on such recommendations on appeal.

Finally, Mr. Williams appears to suggest that his urine sample was diluted based on the fact that he was working at his prison job when he was called to give the sample. Mr. Williams argues that because he had been instructed to drink plenty of fluids, the excess fluids caused his urine to become diluted. There is no evidence in the disciplinary board record to support Mr. Williams' contention. Rather, this argument challenges the intrinsic correctness of the board's decision; as discussed above, the common law writ of certiorari cannot be used to challenge the intrinsic correctness of an administrative finding so long as there was some evidence to support it. *Willis*, 113 S.W.3d at 712; *Stewart*, 368 S.W.3d at 465; *Arnold*, 956 S.W.2d at 480.

## B. Witnesses

Mr. Williams alleges that the disciplinary board acted "arbitrarily and illegally by refusing to allow him to present the testimony of relevant witnesses." If an inmate wishes to call witnesses at his or her disciplinary hearing, TDOC Policy No. 502.01(VI)(L)(4)(d)(1) requires that the inmate complete form CR-3511, Inmate Witness Request, and submit the form to the hearing officer at least twenty-four hours prior to the hearing. If an inmate does not complete the witness form, the hearing officer has discretion to deny the live witness. However, even if the hearing officer denies in person testimony from the witness, the inmate may submit a written witness statement.

Here, the disciplinary record contains three witness request forms—one for Officer Godwin, one for Counselor Setzer, and one for Officer Serna. As discussed above, both Officer Godwin and Officer Serna testified at the hearing. The record indicates that Mr. Williams' request for Counselor Setzer to testify was denied because Counselor Setzer lacked training to read lab tests. As noted above, TDOC policy allowed

Mr. Williams to file a written witness statement from Counselor Setzer after live testimony was denied. However, there is no indication that Mr. Williams attempted to submit such a statement. Regardless, there is no basis for a finding that Mr. Williams' request for Counselor Setzer's testimony was denied arbitrarily; rather, the reason given was that Counselor Setzer had no training to read lab tests.

## C. Findings

Mr. Williams asserts that the disciplinary hearing officer failed to provide detailed reasons for the board's decision in contravention of TDOC Policy No. 502.01(VI)(L)(4)(n). This policy requires the hearing officer to state detailed reasons for the board's decision and to summarize the evidence that led to its decision. Here, the hearing officer described the evidence as follows: "Report and US Diagnostics Lab Report." The hearing officer further described the findings of fact and evidence the board relied on as follows: "Guilty based on lab report that inmate's sample was diluted due to specific gravity and creatinine level being low which by policy these things are checked to see if dilution has occurred." Based on the actual evidence adduced at the hearing, as discussed above, the hearing officer's report adequately sets forth the evidence and findings of fact that the board relied on in reaching its decision. Mr. Williams does not elaborate concerning what additional findings or information should have been included in the officer's report. From the totality of the circumstances, the reporting official complied with the relevant policy requirements.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with the opinion. Costs of the appeal are assessed against the Appellant, Dexter Lee Williams. Because Mr. Williams is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

_____

KENNY ARMSTRONG, JUDGE