IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 3, 2020

## GARY WAYNE GARRETT v. TENNESSEE BOARD OF PAROLE

**Appeal from the Chancery Court for Davidson County**
No. 16-0355-I     Claudia Bonnyman, Chancellor

———————————————

### No. M2019-01742-COA-R3-CV

———————————————

An inmate petitioned for a common law writ of certiorari after the Tennessee Board of Parole denied him parole. The trial court dismissed the petition. In this appeal, the inmate argues that the Board's action was illegal and arbitrary and that the rules and procedures in place at the time of his crimes should have governed his parole. We affirm the dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON II, J., joined.

Gary Wayne Garrett, Clifton, Tennessee, pro se appellant.

Herbert H. Slatery III, Attorney General and Reporter, and Charlotte Davis, Assistant Attorney General, for the appellee, Tennessee Board of Parole.

## OPINION

### I.

In 1986, Gary W. Garrett was convicted of multiple offenses, including first degree burglary while in possession of a firearm, aggravated rape, assault with intent to commit rape while employing a firearm, and rape. *State v. Garrett*, C.C.A. No. 86-274-III, 1988 WL 3625, at *1 (Tenn. Crim. App. Jan. 20, 1988). He "received a total effective sentence of 119 years." *Id.*

In 2015, the Tennessee Board of Parole denied him parole. The denial followed a hearing in which Mr. Garrett, his siblings, and the family's pastor spoke in favor of his release. One of Mr. Garrett's victims spoke in opposition to his release. Letters opposing Mr. Garrett's release were also submitted.

A Parole Board member, who was designated as the hearing officer, presided over the hearing. *See* Tenn. Code Ann. § 40-28-105(d)(2) (2018). At the conclusion of the hearing, the hearing officer announced that he would vote to deny parole based on "the seriousness of the offense." Later, three additional Parole Board members concurred in the denial. *See id.* § 40-28-105(d)(6) (requiring the concurrence of four board members to deny parole for certain offenses, including aggravated rape and rape). The members agreed that "release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law." *Id.* § 40-35-503(b)(2) (2019).

Mr. Garrett appealed the denial of parole to the Parole Board based on alleged hearing officer misconduct and significant procedural errors. *See id.* § 40-28-105(d)(11). But a reviewer found Mr. Garrett's claims not substantiated. *Id.*; TENN. COMP. R. & REGS. 1100-01-01-.08(4)(c) (2020).

Mr. Garrett then petitioned for a common law writ of certiorari. The chancery court dismissed the petition. *Garrett v. Tenn. Bd. of Parole*, No. M2016-01738-COA-R3-CV, 2017 WL 4513570, at *2 (Tenn. Ct. App. Oct. 10, 2017). It determined that "the initial filing was timely but unverified, thereby requiring dismissal for lack of jurisdiction." *Id.* We reversed and remanded. *Id.* at *4. Based on Mr. Garrett's claim that prison authorities denied him access to a notary, we directed the court to consider "whether leave should be granted to permit the late filing of the verified petition as a result of excusable neglect." *Id.* at *3.

On remand, the chancery court granted Mr. Garrett leave to late file his verified petition due to excusable neglect. *See* Tenn. R. Civ. P. 60.02(2). The court considered the merits of his claims and dismissed the petition.

**II.**

The grant of parole is a discretionary matter, vested exclusively in the Board. *Doyle v. Hampton*, 340 S.W.2d 891, 893 (Tenn. 1960). "Prisoners do not have an absolute right to be released from [prison] prior to the expiration of their sentences." *Hopkins v. Tenn. Bd. of Paroles & Prob.*, 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001). So, parole is considered a privilege, not a right. Tenn. Code Ann. § 40-35-503(b); *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012); TENN. COMP. R. & REGS. 1100-01-01-.02(2) (2019).

A writ of certiorari is the "procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals." *Settle v. Tenn. Dep't of Corr.*, 276 S.W.3d 420, 425 (Tenn. Ct. App. 2008). Review is limited to a narrow examination of "whether the Board exceeded its jurisdiction, or acted illegally, fraudulently, or arbitrarily." *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997). We do not review the "intrinsic correctness of the Board's decision." *Stewart*, 368 S.W.3d at 465.

## A.

In this appeal, Mr. Garrett purportedly raises only two issues. Specifically,

### ISSUE I

DID THE BOARD OF PAROLE ACT[] ILLEGALLY, ARBITRA[RIL]Y AND CAPRICIOUS[LY] WHEN IT DID NOT COMPLY WITH THE TENN. CODE ANN. [§§] 8-44-108,[1] 40-28-105(B)[2] AND THE B[OARD] O[F] P[AROLE] RULES, TENN. COMP. RULES AND REG. CHAPTER 1100-01-01-.04(1)(a)[3] WHICH REQUIRED A QUORUM FOR HIS HEARING?

### ISSUE II

DID THE B[OARD] O[F] P[AROLE] VIOLATE [MR. GARRETT]'S PROCEDURAL DUE PROCESS RIGHT WHEN THE BOARD DENIED HIM PAROLE BASE[D] ON THE STATUTES, RULES, AND POLICIES IN EFFECT IN 1985?

---

[1] Tennessee Code Annotated § 8-44-108 provides, among other things, that a "governing body may . . . allow participation by electronic or other means of communication for the benefit of the public and the governing body in connection with any meeting authorized by law." Tenn. Code Ann. § 8-44-108(b)(1) (Supp. 2020). But, while permitting participation by electronic or other means, the statute also requires the presence of "a physical quorum . . . at the location specified in the notice of the meeting as the location of the meeting." *Id.*

[2] Tennessee Code Annotated § 40-28-105 applies specifically to the Parole Board. Subsection (b) directs the board to "schedule hearings at each correctional institution or facility at times as may be necessary to discharge its duties." Tenn. Code Ann. § 40-28-105(b). It further requires all votes to "be by public ballot or public roll call" and prohibits "secret ballots or secret roll calls." *Id.*

[3] The regulation provides that the quorum requirements for the Parole Board "shall be those specified by law." TENN. COMP. R. & REGS. 1100-01-01-.04(1)(a) (2019). Statute provides that "[a] majority of members of the board shall constitute a quorum for official administrative business." Tenn. Code Ann. § 40-28-105(d)(1). The Parole Board is composed of seven members. *Id.* § 40-28-103(a) (2018).

But, in his argument, Mr. Garrett touches on a host of other issues. Because Mr. Garrett represents himself and lacks legal training, we grant him "a certain amount of leeway in drafting . . . pleadings and briefs." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 397 (Tenn. Ct. App. 1997)). Yet, we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

One of those procedural rules is the requirement that the brief of an appellant include "[a] statement of the issues presented for review." Tenn. R. App. P. 27(a)(4). When an issue is argued in a brief but not included in the statement of issues, we consider the issue waived. *Childress v. Union Realty Co., Ltd.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002); *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). So we only address the issues designated in Mr. Garrett's statement of issues.

B.

For his first issue, Mr. Garrett argues that the Parole Board acted illegally, arbitrarily, and capriciously when his "parole hearing was conducted by one board member instead of a quorum." He relies on statutes and a regulation setting quorum requirements for meetings. *See, e.g.*, Tenn. Code Ann. § 40-28-105(b), (d)(1); TENN. COMP. R. & REGS. 1100-01-01-.04(1)(a) (2019).

Although the Parole Board meetings do have quorum requirements, nothing in the statute specifying the requirement mandates that the board "meet and deliberate prior to making a parole decision." *Arnold*, 956 S.W.2d at 481. Our supreme court expressed the view that "the legislature ha[d] . . . purposely eliminated language that required the Board to meet in order to make parole decisions." *Id.* at 482. The court also viewed the practice that Mr. Garrett now complains of, the "practice of submitting the hearing officer's recommendations in writing to each Board member individually[,] . . . [as] consistent with the legislative intent." *Id.* Because the Parole Board is not required to meet to make a parole decision, quorum requirements have no application. So Mr. Garrett's argument concerning the manner in which his parole hearing was conducted is unavailing.

C.

Mr. Garrett's claimed due process violation stems from the Parole Board's failure to apply law from 1982 and 1985 to its decision. Or, as he restates the issue, is he "entitle[d] to mandatory or discretionary parole based on the . . . factors, practices and procedures set out [in] the statutes and regulations that created a liberty interest in 1982 & 1985?"

4

No matter how he frames the issue, Mr. Garrett's claims lack merit. First, the parole statutes and regulations create no protected liberty interest nor did they at the time he committed his crimes. The case Mr. Garrett relies on to support his claim of a protected liberty interest, *Mayes v. Trammell*, 751 F.2d 175 (6th Cir. 1984), was overruled in *Wright v. Trammell*, 810 F.2d 589, 590-91 (6th Cir. 1987). In *Wright*, the court observed that *Mayes* found a protected liberty interest based on the wording of a Parole Board rule, but the rule was amended "effective on April 10, 1985," to "eliminate[] the words from the former rule which granted a constitutionally-protected liberty interest." *Id.* According to the administrative record, Mr. Garrett's crimes occurred from June through September of 1985, after the change in the Parole Board rule.

No prisoner has a "constitutional or inherent right . . . to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). As we have already noted, in Tennessee, "[r]elease on parole is a privilege and not a right." Tenn. Code Ann. § 40-35-503(b); *Brennan v. Bd. of Parole*, 512 S.W.3d 871, 873 (Tenn. 2017). "Without [a constitutionally-protected liberty interest in parole], due process does not attach." *Phifer v. Tenn. Bd. of Parole*, No. M2000-01509-COA-R3-CV, 2002 WL 31443204, at *3 (Tenn. Ct. App. Nov. 1, 2002).

Second, the laws applicable at the time of Mr. Garrett's crimes did not entitle him to mandatory parole. In *Hickman v. Tenn. Bd. of Paroles*, this Court explained:

The concept of "mandatory parole" now found in Tenn. Code Ann. § 40-28-117(b) entered our law in 1974. Mandatory parole and discretionary parole coexisted until the Tennessee General Assembly enacted the Tennessee Criminal Sentencing Reform Act of 1982 which substantially rewrote our state's sentencing and parole laws. To avoid ex post facto challenges, the 1982 Act explicitly stated that it applied to "all persons who commit crimes on or after July 1, 1982." Tenn. Code Ann. § 40-35-112(a) (1986) (repealed). The Tennessee General Assembly purposely did not repeal the mandatory parole statute because it continued to govern the sentence and release of persons who committed crimes prior to July 1, 1982. However, in light of the fact that the sentencing and release of persons committing crimes after July 1, 1982 was governed by the Tennessee Criminal Sentencing Reform Act of 1982, *persons who committed crimes after July 1, 1982 were not entitled to mandatory parole simply because the Tennessee Criminal Sentencing Reform Act of 1982 did not contain a provision for mandatory parole.*

78 S.W.3d 285, 290 (Tenn. Ct. App. 2001) (footnotes omitted) (emphasis added).

Mr. Garrett devotes much space in his brief attempting to illustrate how the 1985 amendments to the 1982 Tennessee Criminal Sentencing Act entitle him to relief. But, the

1985 amendments did not make any substantive changes to the statutes affecting eligibility for parole nor do the amendments entitle him to mandatory parole.[4] *See* 1985 Tenn. Pub. Acts 22. Based on the dates he committed his crimes, the mandatory parole provisions were not applicable to Mr. Garrett.

## III.

We conclude that the Parole Board applied the correct law and procedures in denying Mr. Garrett parole. So we affirm the decision of the chancery court.

_____s/ W. Neal McBrayer_____
W. NEAL MCBRAYER, JUDGE

---

[4] The amendments did impact parole eligibility in cases involving sentencing agreements. 1985 Tenn. Pub. Acts 22, 32-33 (ch. 5, §§ 25, 26). But the record does not reflect that Mr. Garrett entered into a sentencing agreement.

6