IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

Assigned On Briefs February 22, 2008

## MIKE SETTLE v. TENNESSEE DEPARTMENT OF CORRECTION, et al.

**Direct Appeal from the Chancery Court for Davidson County
No. 05-3061-II     Carol McCoy, Chancellor**

---

**No. M2007-01781-COA-R3-CV - Filed May 27, 2008**

---

Appellant, a prisoner in the custody of the Tennessee Department of Correction, challenges the trial court's order dismissing his Petition for Writ of Certiorari. The record reveals that the court reached its decision in a lawful manner. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Mike Settle, *Pro Se*.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General and Kellena Baker, Assistant Attorney General, for the Tennessee Department of Correction.

**OPINION**

Mike Settle (Appellant) is a prisoner in the custody of the Tennessee Department of Correction ("TDOC"). On August 14, 1999, Mr. Settle was transported from the Hardeman County Correctional Facility to the Jackson-Madison County General Hospital for an apparent drug overdose. At that time, Mr. Settle was classified as a medium security inmate. While in the hospital, on August 16, 1999, Mr. Settle requested that his restraints be removed so that he could use the restroom. The correctional officer in charge of Mr. Settle partially removed the restraints, at which time Mr. Settle struck the officer. Mr. Settle obtained the officer's weapon, and escaped from custody, taking a hostage and a car from the hospital parking lot. *Willis v. Settle*, 162 S.W.3d 169 (Tenn. Ct. App. 2004).

When Mr. Settle was caught, he was charged with the prison disciplinary infractions of escape and assault on staff. He pled guilty to both charges. For each conviction, the prison

disciplinary board (the "Board") sentenced Mr. Settle to thirty days punitive segregation and imposed a five dollar fine. For both the assault and escape convictions, the Board recommended that Mr. Settle be subject to outside charges, *see Settle v. State*, No. W2003-01261-CCA-R3-PC, 2004 WL 1656481 (Tenn. Crim App. July 23, 2004). For the escape conviction, Mr. Settle's release eligibility date was extended to his sentence expiration date; this recommendation was approved by the Commissioner's Designee and the Warden of the Hardeman County Correctional Facility. For the assault conviction, the Commissioner's Designee and the Warden approved the loss of nine months of sentence credit. For the escape conviction, the Board recommended that Mr. Settle be placed in administrative segregation. This recommendation was also approved.

On December 12, 2005, Mr. Settle filed a petition for writ of certiorari against Commissioner George Little (together with the TDOC, "Appellees") in the Davidson County Chancery Court, seeking review of the actions of the TDOC in placing Mr. Ward in administrative segregation.[1] In his petition, filed pursuant to T.C.A. § 27-8-101, Mr. Settle seeks declaratory and injunctive relief based upon his allegations that he was not provided a copy of the written post-hearing statement of the Board's decision, including the evidence relied upon, in reaching its decision to place Mr. Settle in administrative segregation.

On February 14, 2006, Mr. Settle filed a Motion for Default Judgment. On March 14, 2006, Mr. Settle filed a Motion for Summary Judgment. On March 17, 2006, Appellees filed a Motion to Dismiss the petition, and, on March 20, 2006, filed a response in opposition to Mr. Settle's motion for summary judgment. On March 29, 2006, Mr. Settle filed a document titled "Amended Complaint," and a response to Appellees' Motion to Dismiss.

On September 1, 2006, the trial court entered an Order, which reads, in pertinent part, as follows:

> The Petitioner . . . seeks certiorari review of procedures employed in conjunction with a review of his placement in administrative segregation. He also seeks injunctive relief, and a declaratory judgment that TDOC Policy #404.10 requires written notice be given to him when his time under administrative segregation is extended . . . .
>
> . . . .
>
> The Petitioner seeks relief under Tenn. Code Ann. §4-5-223(a) of the Declaratory Judgment Act, which states that "[a]ny affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency." However, Tenn. Code Ann. § 4-5-102(10)(A) exempts from the definition of a "rule" any "statements concerning only the internal management of state government and not affecting private rights,

---

[1] Commissioner Little is sued in his official capacity only.

privileges, or procedures available to the public." Furthermore, Tenn. Code Ann. § 4-5-102(10)(G) also exempts from the definition of "rule" "statements concerning inmates of a correctional or detention facility." Therefore, this action is not properly brought as one for declaratory judgment.

. . . .

The scope of review available through the common-law writ is extremely narrow. The writ may be used only to determine whether, in a particular case, the disciplinary board exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily; it may not be used to review the correctness of the Board's decision.

. . . .

In the present case, the petition states that the prison review committee met to review the status of the Petitioner's confinement in administrative segregation. The committee purportedly determined that the Petitioner's confinement in administrative segregation should be extended for another 30 days. The Petitioner states that he did not receive a written copy of the review committee's decision and its rationale as required under TDOC Policy #404.10. He alleges that he filed a grievance, but that his grievance was denied. He further states that the committee made the same decision since October of 2005, "without discussing the need for administrative segregation."

The Petitioner contends that he has a protected liberty interest in residing in the general prison population. He further alleges that TDOC regulations governing the administration of state prisons created such an interest.

. . . .

. . . . As the Petitioner has not alleged that he received punishments that would entitle him to procedural due process protections under *Sandin* [*v. Conner*, 515 U.S.472 (1995)], his due process argument must fail.

. . . . In addition to his due process claim, Petitioner alleges that the disciplinary board violated his rights by failing to follow its own established procedures. . . . [T]he Petitioner has failed to show that the review board's decision to keep him in administrative segregation constituted an "atypical and significant hardship" under *Sandin*. Therefore, due process rights are not invoked and this argument must fail.

The only issue remaining is whether the Petitioner is being held in continuing segregation as a ***punitive*** *measure*, despite its characterization as administrative.

-3-

Without the record before it, the Court cannot make such a determination. Accordingly, the writ of certiorari is hereby issued and the Respondents are instructed to file a certified copy of the D.S.N.F. review commission's records. . . .

(Internal citations and footnote omitted) (emphasis in original).

On October 24, 2006, Appellees filed a certified copy of the record. On the same day, Appellees also filed a Motion for Judgment on the Record. Mr. Settle filed a response in opposition to this motion, and also filed a Motion for Judgment as a Matter of Law. Following a review of the record, the trial court issued its Order on July 10, 2007. That Order reads, in relevant part, as follows:

The only issue remaining is whether the Petitioner is being held in continuing segregation as a ***punitive*** *measure*, despite its characterization as administrative.

TDOC policy defines administrative segregation as the non-punitive segregation of inmates, for control purposes, who are believed to be a threat to the security of the institution, the welfare of staff, or other inmates. . . .

. . . .

A review of the record shows that the inmate pled guilty to the Class A Infractions of Escape and Assault on Staff with a Deadly Weapon, and that he waived his right to a disciplinary hearing. His contention that he was not informed of the reasons for his placement in administrative segregation is, thus, disingenuous. In deciding to impose administrative segregation, the Disciplinary Board had before it the following facts: the Petitioner planned his escape ahead of time, he used a deadly weapon, he assaulted a staff member, he stole a car and he abducted a hostage. In addition, the Petitioner's prior record showed three disciplinary convictions from 1993 to 1997 for possession of a deadly weapon, along with convictions for fighting, threatening an employee, and other lesser offenses.

Since his placement in administrative segregation, the Petitioner has received disciplinary convictions for disrespect, refusal of a direct order, and interference with an officer's duties. The administrative record contains monthly review forms wherein the administrative panel recommends that the Petitioner remain in administrative segregation.

. . . .

In the present case, the warden's decision to adopt the panel's recommendation that the Petitioner remain in administrative segregation appears to be for reasons of security, safety and prison management. Accordingly, the Court

-4-

finds that the Petitioner has failed to demonstrate that the warden acted illegally, fraudulently or arbitrarily. . . .

Finally, TDOC Rule 404.10(VI)(B)(3) states that in cases where the panel recommends release from administrative segregation and the warden disagrees, "there shall be a detailed statement of reasons prepared with a copy provided to the inmate." It does not appear that the panel has made such a recommendation, so as to trigger the Rule 404.10(VI)(B)(3) requirement that the inmate receive a copy of such statement. Thus, the Petitioner's contention that he has not been provided with copies of his monthly administrative segregation review statement is without merit.

Accordingly, and for the above stated reasons, this case is dismissed. . . .

(Internal citations omitted) (emphasis in original).

Mr. Settle appeals and raises two issues for review, as stated in his brief:

I. Did the Court err[] [in determining] whether the Administrative Segregation Review Panel exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently without the warden['s] final approval decision?

II. Did the Court err[] in fail[ing] to consider the aspects of T.C.A. §§ 4-3-603, 4-3-606, 41-24-110, that authority gives TDOC policy #404.10 an abuse of discretion by relying on incorrect view of the law or on clearly erroneous factual findings?

The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals. *See Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn.Ct.App.1998) (citing *Bishop v. Conley*, 894 S.W.2d 294 (Tenn.Crim.App.1994)). By granting the writ, the reviewing court orders the lower tribunal to file its record so that the court can determine whether the petitioner is entitled to relief. Review under a writ of certiorari is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. *McCallen v. City of Memphis*, 786 S.W.2d 633, 640 (Tenn.1990). The reviewing court does not weigh the evidence, but must uphold the board's decision if the board acted within its jurisdiction, did not act illegally or arbitrarily or fraudulently, and if there is any material evidence to support the board's findings. *Watts v. Civil Serv. Bd. of Columbia*, 606 S.W.2d 274, 276-77 (Tenn.1980); *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn.1983). Consequently, the scope of review under the common-law writ of certiorari is very narrow. In *Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871, 873 (Tenn.Ct.App.1994), this Court stated:

The scope of review under the common law writ, however, is very narrow. It covers only an inquiry into whether the Board has exceeded its jurisdiction or is

acting illegally, fraudulently, or arbitrarily. Conclusory terms such as "arbitrary and capricious" will not entitle a petitioner to the writ. At the risk of oversimplification, one may say that it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached. If the agency or board has reached its decision in a constitutional or lawful manner, then the decision would not be subject to judicial review.

*Id*. at 873 (citations omitted).

These determinations are issues of law. *Watts*, 606 S.W.2d at 277. Because a writ of certiorari is not available as a matter of right, its grant or denial is within the sound discretion of the trial court. Such decisions will not be reversed on appeal unless there is abuse of that discretion. *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn.Ct.App.2001) (citing *Boyce v. Williams*, 389 S.W.2d 272, 277 (1965)).

On appeal, Mr. Settle first contends that his placement in administrative settlement was illegal because the Warden neither signed, nor gave Mr. Settle, a copy of the post-hearing statement. TDOC Policy #404.10 is triggered by Mr. Settle's assertion. This policy reads, in pertinent part, as follows:

3.     The board, after hearing and disposing of a charge for a disciplinary rule infraction, may recommend that an inmate be placed in AS [i.e., administrative segregation] when it is believed that their continued presence in the general population may present a threat to security, the staff, or other inmates.

   a.     The inmate shall be verbally advised by the board of its recommendation and be afforded the opportunity to present a statement during the hearing.

   b.     The board shall clearly state the reason(s) for the recommendation on the AS Placement Report [and] send to the warden for approval, along with any pertinent information regarding the offense which was available to the board at the panel hearing. At privately managed facilities, the warden shall secure the approval of the CD [i.e., Commissioner's Designee] prior to the segregation taking effect. . . .

*Id*. at §§ 404.10 (VI)(A)(3)(a) & (b).

As discussed above, Mr. Settle pled guilty to escape and assault charges, and waived his right to a disciplinary hearing. As a result of Mr. Settle's escape (which included use of a deadly weapon, and taking a hostage), the Board recommended that he be placed in administrative segregation. The

Board's recommendation was approved by the Commissioner's Designee, and also by the Warden. The administrative record indicates that the Warden's reason for approving the placement was that the "[i]nmate escaped from the outside hospital in Jackson Tenn. During his escape, a hostage was taken as well as a vehicle which resulted in a high speed chase. Inmate also assaulted staff and obtained his weapon which was also used in the hostage situation." TDOC Policy #404.10(VI)(A)(1)(a) provides:

> 1. Administrative segregation (maximum custody/security) is provided as a means of control and management. This level of segregation is for inmates who, because of conditions surrounding their incarceration, are believed to pose serious risks to the security and good order of the institution or the safety of other inmates, staff, or the community and therefore require custody and security at the highest level. Inmates considered for this category shall include, but not be limited to, those who:
>
> > a. Have been returned to TDOC custody following an escape or attempted escape incident from a secure setting (custody levels of minimum restricted) or higher, or from minimum security with actual or threatened violence;

Pursuant to the TDOC Administrative Policies and Procedures, Mr. Settle, as an escapee who posed a serious threat to a staff member and an innocent hostage, was required to be placed in administrative segregation. We find no mandate, however, that this placement required a signature from the Warden and/or written notice to the inmate.

Mr. Settle further contends that his placement in administrative segregation violated his due process rights. We disagree. The United States Supreme Court has held that an inmate's constitutional due process rights are only violated if the prescribed punishment "imposes an atypical and significant hardship on the inmate in relation to the normal incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995). Moreover, this Court has determined that a prisoner's placement in administrative segregation does not impose a significant hardship and, therefore, does not implicate constitutional due process protections. *See, e.g., Woodruff v. Tenn Dep't of Corr.*, No. M2001-00494-COA-R3-CV, 2002 WL 1974138, *5-*6 (Tenn. Ct. App., Aug. 28, 2002).

Mr. Settle next argues that his continued confinement in administrative segregation is illegal. Specifically, Mr. Settle takes issue with the fact that the Warden did not approve continued administrative segregation on August 31, 1999, October 22, 1999, and June 7, 2001. Turning back to the TDOC policies, § 404.10(VI)(B)(2) requires that:

> 2. Every seven (7) days from date signed by approving authority, an inmate's status will be reviewed by the administrative review panel or other authorized staff designated by the warden during the first two (2) months in AS. The 4th

and 8th week reviews shall be in accordance with VI.(B)(3) below.  Weekly reviews are documented on Contact Notes...and shall include a summary of the inmate's adjustment as well as panel members present.

The administrative record indicates that the review panel met with Mr. Settle during both the fourth and the eighth week of his confinement in administrative segregation.  The panel's recommendations on both occasions were approved by the Warden.  Although the TDOC policies further provide that, in cases where the panel recommends release from segregation and the Warden disagrees, "there shall be a detailed statement of reasons prepared with a copy provided to the inmate." TDOC Policy §404.10(VI)(B)(3), in the instant case, the panel did not recommend release from segregation.  Consequently, §404.10(VI)(B)(3) was not triggered, and Mr. Settle was not entitled to written notice from the Warden.

Mr. Settle also argues that his continued confinement in administrative segregation constitutes "disciplinary confinement."  Specifically, he contends that the trial court abused its discretion in relying upon TDOC Policy §404.10 instead of *The Adult Service Policies and Procedures Manual of the TDOC* Rules 4.601(5) and 4.602.  He also asserts that the trial court erred because it allegedly did not consider the duration of his placement, or his confinement at different prisons.  We disagree.

TDOC Policy § 404.10(IV)(A) defines administrative segregation as "[t]he non-punitive segregation of inmates, for control purposes, who are believed to be a threat to the security of the institution, the welfare of staff, or to other inmates."  Consequently, the Board may recommend that an inmate be placed in administrative segregation when the Board believes that the inmate's continued presence in the general population may present a threat to security, the staff, or other inmates. TDOC Policy § 404.10(IV)(A)(3).  Mr. Settle contends that he does not meet these criteria, and that, consequently, his confinement in administrative segregation is punitive in nature.  We disagree.

We cannot conclude that his continued confinement is for purposes of punishment.  In *Clark v. Rose*, 183 S.W.3d 669 (Tenn. Ct. App. 2005), this Court affirmed the trial court's finding that an inmate's confinement in administrative segregation was non-punitive where the inmate had a history of violence and had assaulted and stabbed another inmate.   Likewise, the nature of Mr. Settle's escape, which is the act that precipitated his confinement in administrative segregation, shows a propensity toward violence.  The facts surrounding his escape are thoroughly set out in *Willis v. Settle*, 162 S.W.3d 169 (Tenn. Ct. App. 2004).  It is sufficient for the current appeal that Mr. Settle used deadly force in perpetrating his escape.  He assaulted the officer in charge, used the officer's gun to take a hostage (whom he kept at gunpoint throughout most of her ordeal).  He led police on a high-speed chase, putting his hostage, other officers, and the public at large at great risk.  Once captured, he admitted to the charges, and conceded that he had planned the escape prior to going to the hospital.  In addition to the facts surrounding Mr. Settle's escape and capture, the administrative record reveals that Mr. Settle's status has been reviewed regularly.  In reaching its recommendation that Mr. Settle remain confined, the panel has noted many times that Mr. Settle has a poor attitude

toward authority, that he has engaged in activities that led to other disciplinary actions, that he has displayed violent and threatening behavior toward other inmates and staff. From the totality of the circumstances, we conclude that there is good reason for Mr. Settle's segregation from the general population. Rather than punitive in nature, Mr. Settle's continued confinement appears to be a necessary action in order to combat his disruptive and dangerous propensities. The fact that three different prison wardens have approved the Board's recommendation to continue Mr. Settle's administrative confinement only works to strengthen the case for that confinement. In *Woodruff v. Tenn Dep't of Corr.*, No. M2001-00494-COA-R3-CV, 2002 WL 1974138 (Tenn. Ct. App., Aug. 28, 2002), this Court held that the "warden has wide discretion to place an inmate in administrative segregation for reasons of security, safety, and prison management . . . ." Given Mr. Settle's history, and based upon the record before us, we find that Mr. Settle's confinement in administrative segregation is not punitive in nature, but is a necessary placement in order to protect staff and other inmates.

In conclusion, there is nothing in the record to indicate that the disciplinary board acted outside its jurisdiction or acted arbitrarily, fraudulently, or illegally. The trial court was, therefore, correct in dismissing Mr. Settle's petition.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the Appellant, Mike Settle.

_____
DAVID R. FARMER, JUDGE