IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 9, 2014


RONALD TERRY v. TENNESSEE DEPT OF CORRECTIONS ET AL.


Appeal from the Chancery Court for Davidson County
No. 12-0630-I     Claudia Bonnyman, Chancellor

---

No. M2013-02206-COA-R3-CV - Filed July 25, 2014

---

An inmate in the custody of the Tennessee Department of Correction filed this petition for common law writ of certiorari challenging his placement in involuntary administrative segregation. He contends his placement in administrative segregation is punitive, and violates his constitutional due process rights as well as Department rules. The respondents assert that his placement in administrative segregation was non-punitive because it was necessary for the safety of staff and other inmates; respondents also assert that a writ of certiorari is not the appropriate means to challenge a non-punitive action. Following a review of the record, the trial court dismissed the petition. Finding no error in the trial court's determination that the inmate's placement was non-punitive and that, as such, the common law writ of certiorari was not the proper means of challenging his status, we affirm.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

Ronald Terry, Pikeville, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter, and Jennifer L. Brenner, Nashville, Tennessee, for the appellees, Tennessee Department of Correction, Roland B. Colson, John Fisher, Sandra Hall, Derrick D. Schofield, Bill Smith, and Jason Woodall.


**OPINION**


Ronald Terry, who was incarcerated at Southeastern Tennessee State Regional Correctional Facility, was removed from the general population on January 16, 2012, by order of the warden and placed in Involuntary Administrative Segregation at Riverbend Maximum Security Institution in Nashville, Tennessee. The warden's decision was based on

an investigation by Director Jason Woodall and Assistant Director John Fisher from the Office of Investigation and Compliance and their recommendation that Terry be removed from the general population and placed in administrative segregation for the safety of prison staff and other inmates.

While Terry remained in administrative segregation, he made several failed attempts to obtain more information from prison officials concerning the reasons for being segregated from the general population; as a result, on April 27, 2012, he filed a petition for common law writ of certiorari. Terry alleged he was placed and continually held in administrative segregation without cause or notice in violation of Department policies which deprived him of his due process rights. He further alleged that his loss of sentence credits and parole eligibility date without notice also violated his due process rights. The respondents identified in the petition include the Tennessee Department of Correction; Commissioner Derrick Schofield; Internal Affairs Official Jason Woodall; Internal Affairs Official John Fisher; Internal Affairs Official Puckett; Warden Roland Colson; Unit Manager Sandra Hall; and Classification Coordinator Bill Smith (the "Respondents").

The Respondents filed a motion to dismiss the writ pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim for which relief may be granted, contending that Terry's placement in administrative segregation was non-punitive; therefore, it was a non-disciplinary proceeding for which a writ of certiorari is inappropriate and unavailable.

Following a review of the petition, the trial court granted the writ and ordered the Respondents to file the administrative record; the court also ruled that it would hold the motion to dismiss in abeyance pending its receipt of the record and additional briefing concerning whether or not Terry's administrative segregation was punitive. The Respondents submitted a supplemental response, which included the affidavit of John Fisher along with several documents, some of which were deemed confidential administrative records that were filed under seal.

Thereafter, the trial court conducted an in camera examination of the record and, pursuant to an order entered August 22, 2013, the trial court dismissed the writ of certiorari upon the finding that Terry's placement in administrative segregation was non-punitive and that the monthly decisions to keep him in administrative segregation were also non-punitive. Specifically, the court found sufficient evidence to support the Respondents' contention that Terry was a member of a prison gang, and there was reliable information upon which the warden could find that Terry had a history of promoting violence within the prison which necessitated his removal from the general population for the safety of prison staff and inmates. This appeal followed.

**ANALYSIS**

We begin our analysis by reviewing the trial court's finding that Terry's placement in administrative segregation was a non-punitive action because it was for the safety of prison staff and other inmates. This initial review is necessary because "[t]he proper vehicle for challenging a *disciplinary action* is a petition for a common law writ of certiorari," *Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (emphasis added), whereas reviews of non-disciplinary actions fall under the scope of the Uniform Administration Procedures Act, *Clark v. Rose*, No. W2002-01245-COA-R3-CV, 2003 WL 21051737, at *4 (Tenn. Ct. App. Feb. 5, 2003). Thus, non-disciplinary actions cannot be challenged by a common law writ of certiorari. *Clark*, 2003 WL 21051737 at *4.

According to the Department's policies, administrative segregation is "[t]he non-punitive segregation of inmates, for control purposes, who are believed to be a threat to the security of the institution, the welfare of staff, or to other inmates and the community." TDOC Policy #404.10(IV)(A); *see also Woodruff v. Tenn. Dep't of Corr.*, No. M2001-00494-COA-R3-CV, 2002 WL 1974138, at *3 (Tenn. Ct. App. Aug.28, 2002) (citing *Perry v. Campbell*, No. M1998-00943-COA-R3-CV, 2001 WL 46988, at *2 (Tenn. Ct. App. Jan. 22, 2001) (stating that "Department of Correction regulations make clear that administrative segregation is a 'control mechanism,' not a disciplinary sanction")). Moreover, "the warden has wide discretion to place an inmate in administrative segregation for reasons of security, safety, and prison management, and the courts are reluctant to second-guess the exercise of that discretion." *Woodruff*, 2002 WL 1974138, at *5.

The Respondents filed the affidavit of John Fisher, Assistant Director of Investigations with the Investigations Unit of the Tennessee Department of Correction, who stated that Terry was originally placed in administrative segregation "because he was a risk to the prison population and to staff," and that the segregation was "not punitive in nature" but to "protect staff and inmates from further violence at the direction of Mr. Terry." Furthermore, Mr. Fisher stated that Terry's "initial placement in segregation was carefully considered by myself and prison administration, and his segregation status is periodically reviewed pursuant to prison policy."

The record also reveals that Terry was continually held in administrative segregation based on periodic reviews which occurred monthly. These reviews were approved by either members of the Disciplinary Board and the warden or by the warden alone. In addition, the record contains a document dated April 17, 2012, and signed by members of the Disciplinary Board and the warden, which lists the "Triggering Incident" as "confidential information" that Terry presented a "high security risk." The record reveals that there was no particular "triggering incident" that justified the administrative segregation; rather, it was the result of

an on-going investigation that revealed Terry's involvement in gang-related violence within the prison.

The information in the record that is not under seal reveals that Terry was involved in a prison classification known as a "Security Threat Group," due to his association in a prison gang identified as the "Vice Lords." In 2011, he received disciplinary infractions on his record for disrespect and refusal of a direct order and, in 2012, he was disciplined for possession and use of a cell phone. The confidential information in the record also provides credible information to establish Respondents' belief that Terry was involved in gang-related violence in the prison system and that he constitutes a safety risk to prison staff and other inmates.

Thus, from the record as a whole and the "totality of the circumstances," *see Settle v. Tenn. Dep't of Corr.*, 276 S.W.3d 420, 428 (Tenn. Ct. App. 2008), we find sufficient evidence to conclude that Terry's placement in administrative segregation was based upon security concerns rather than a punitive objective.

As for his due process claims, a "prisoner has no constitutional right to remain free of administrative segregation," and "the Due Process Clause . . . [does] not confer a liberty interest in avoiding administrative segregation." *Woodruff*, 2002 WL 1974138, at \*5 (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). Moreover, the United States Supreme Court has held that an inmate's constitutional due process rights are only violated if the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). This Court previously held that an inmate's placement in administrative segregation does not impose a significant hardship, and, therefore, does not implicate constitutional due process protections. *Woodruff*, 2002 WL 1974138, \*5-6. Thus, Terry's placement in administrative segregation does not constitute the deprivation of his due process rights.

The trial court dismissed Terry's petition for writ of certiorari based upon its finding that segregating him from the general population was warranted due to his history of violence, evidence that he has and may continue to put others at risk, his disciplinary record and violations of prison rules prohibiting the possession and use of a cell phone in prison, and other facts in the record. Based on these findings, the trial court concluded that Terry's administrative segregation was non-punitive. The facts in this record fully support the trial court's findings and conclusions. Therefore, Terry's petition for writ of certiorari should be dismissed as such is not a proper vehicle for grievances arising from non-disciplinary actions. The specific issues raised by Terry are rendered moot by our findings herein.

Accordingly, we affirm the trial court in all respects.

-4-

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Ronald Terry, for which execution may issue.

_____
FRANK G. CLEMENT, JR., JUDGE