# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs November 1, 2021

# LA SOUTHAPHANH v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 18-388-II        Anne C. Martin, Chancellor**

_____

**No. M2021-00234-COA-R3-CV**

_____

A parolee petitioned for a common law writ of certiorari after the Tennessee Board of Parole revoked his parole and did not credit his sentence with a portion of the time he spent on parole. The chancery court concluded that the Board did not act arbitrarily, fraudulently, illegally, or in excess of its jurisdiction. The chancery court dismissed the petition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which ANDY D. BENNETT, J. and J. STEVEN STAFFORD, P.J., W.S., joined.

La Southaphanh, Wartburg, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, and Pamela S. Lorch, Senior Assistant Attorney General, for the appellees, Tennessee Department of Correction, Tennessee Board of Parole, Tony Parker, Commissioner, Tennessee Department of Correction, and Charles Traughber, Chairman, Tennessee Board of Parole.

# MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

# I.    BACKGROUND

On June 17, 1996, La Southaphanh ("Petitioner"), was convicted of two counts of aggravated burglary and theft of property of $1,000 to $10,000 pursuant to Tennessee statutes. He was sentenced to 27 years of confinement. On March 15, 2005, the Tennessee Board of Parole ("Board") hearing officer recommended that Petitioner be released on parole for "immigration deportation only."[2]  Members of the Board adopted the hearing officer's recommendation and granted Petitioner parole. On April 18, 2005, Petitioner was released from the custody of the Tennessee Department of Correction and placed on parole. The parole was set to expire upon the sentence expiration date. Before departing the Southeastern Tennessee State Regional Correctional Facility,[3] Petitioner signed a parole certificate in which he agreed to comply with a number of conditions including:

> I will obey the laws of the United States or any state in which I may be, as well as any municipal ordinances.
>
> I will report all arrests, including traffic violations, immediately, regardless of the outcome, to my Probation/Parole Officer. I will, when away from my residence, have on my person my parole identification card and present it to the proper authority.
>
> I will not own, possess, or carry any type of deadly weapon (guns, rifles, knives) or any illegal weapons.
>
> I will not engage in any assaultive, abusive, threatening or intimidating behavior. Nor will I participate in any criminal street gang related activities as defined in TCA 40-35-121. I will not behave in a manner that poses a threat to others or myself.

Immediately, Petitioner was placed in the custody of the United States Immigration and Naturalization Service. During the deportation process, Petitioner was released and placed

---

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] Petitioner is a foreign national from Laos.

[3] This prison is now known as Bledsoe County Correctional Complex.

under community supervision with specific conditions which included relocating to California to live with his sister. The Board and the California Board of Parole approved Petitioner's request to transfer his parole to California.

On January 19, 2007, Petitioner was arrested in California on several charges. He entered a guilty plea to possession of a firearm and was sentenced to serve four years at 85%. The record contains a parole violation report issued by the Board and dated March 6, 2007. A parole violation warrant was issued against Petitioner by the Board on or around this same date. On January 10, 2008, the supervising parole officer in California completed a form entitled Interstate Commission for Adult Offender Supervision Case Closure Notice concluding that the California Board of Parole would no longer supervise Petitioner because he was serving his sentence in California on the possession of a firearm conviction. On July 10, 2008, the Director of the Board issued a notification letter to the California custodian stating that Petitioner was an alleged parole violator from the State of Tennessee for whom a parole violation warrant was outstanding. The Director of the Board requested that the California prison officials notify his office 90 days before Petitioner's release. Petitioner completed his California sentence and was released on April 3, 2010.

Around the time of his release in 2010, Petitioner moved to Oregon. The record indicates that he was then under the supervision of United States Immigration and Customs Enforcement. On October 28, 2014, Petitioner was convicted of assault in the fourth degree and coercion constituting domestic violence, a felony under Oregon law.

Petitioner states that he returned to California in July of 2016. On June 28, 2017, Petitioner was arrested in execution of the outstanding parole violation warrant from Tennessee. Petitioner was returned to Tennessee on July 18, 2017. On October 19, 2017, the Board held a parole revocation hearing over which hearing officer Angela Swanson presided. In his testimony, Petitioner affirmed that he understood the purpose of the hearing and understood his appeal rights. Petitioner waived his right to have an attorney present. He admitted to violating parole by receiving the out-of-state convictions in California and Oregon. In his defense, Petitioner testified as follows:

> [In] April 2010, on the 3rd, and I have received letter from Tennessee that's supposed to pick me up when I was doing time in California, and they never did show up, pick me up, and I didn't know that I supposed to be reporting, or is it done with? So when I parole out from California, nobody pick me up from Tennessee. . . . I thought I was done with Tennessee, and I didn't know I was still on parole with Tennessee.
>
> . . .
>
> But I know I got a letter from Tennessee, but, you know, Tennessee never showed me—pick me up or tell me to report. I thought I was done with it.

Petitioner explained that he always timely reported to supervising officers in California and Oregon. At the conclusion of the parole revocation hearing, the hearing officer noted "the new felony conviction that [Petitioner] had gotten in Oregon" and informed Petitioner of her recommendation that the Board revoke his parole based upon his admission of guilt to possession of a firearm, assault, and coercion constituting domestic violence. The hearing officer also recommended that Petitioner's "street time" be taken from the date of his release from the California prison until the date the parole violation warrant was served. Stated another way, the hearing officer recommended that Petitioner not receive credit toward his Tennessee sentence for the time he spent on parole between the dates of April 3, 2010 and July 18, 2017. The hearing officer explained that although a declaration of delinquency[4] had not been issued, upon release from prison in California, Petitioner "knew that Tennessee had submitted paperwork for [him] to get in contact with Tennessee, and [he] did not, [he] chose not to."

The Board adopted the hearing officer's recommendations and rescheduled Petitioner's next parole review for October 1, 2023. Petitioner filed an administrative appeal. The Board denied the appeal on December 18, 2017.

On February 7, 2018, Petitioner filed a petition for writ of certiorari in the Hardeman County Chancery Court seeking review of the Board's decision.[5] The action was transferred to the Davidson County Chancery Court ("trial court"). The trial court issued the writ of certiorari on May 28, 2019. Following review of the administrative record and the parties' briefs, the trial court upheld the Board's decision and dismissed the petition by memorandum and order entered February 7, 2020.

Due to clerical errors within the trial court's clerk's office, Petitioner was not given notice that a final order had been entered. To preserve Petitioner's right of appeal, the trial court reopened and closed the case on February 8, 2021, which became the final disposition date. Petitioner appealed.

## II.    ISSUES

Petitioner raises one issue on appeal which we slightly restate: Whether the Board complied with state law and its own rules when it did not credit Petitioner's street time.

---

[4] *See* Tenn. Comp. R. & Regs. 1100-01-01-.14(3).

[5] This was the date Petitioner placed the petition in the prison mail system. *See* Tenn. R. Civ. P. 5.06 ("If papers required or permitted to be filed pursuant to the rules of civil procedure are prepared by or on behalf of a pro se litigant incarcerated in a correctional facility and are not received by the clerk of the court until after the time fixed for filing, filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing.").

## III.    STANDARD OF REVIEW

A common law writ of certiorari is the "procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals." *Settle v. Tenn. Dep't of Corr.*, 276 S.W.3d 420, 425 (Tenn. Ct. App. 2008). Review is limited to a narrow examination of "whether the Board exceeded its jurisdiction, or acted illegally, fraudulently, or arbitrarily." *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Rev. Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). "The intrinsic correctness of the Board's decision is not reviewable." *Stewart v. Schofield*, 368 S.W.3d 457, 465 (Tenn. 2012). "The action of the board in releasing prisoners shall be deemed a judicial function and shall not be reviewable if done according to law." Tenn. Code Ann. § 40-28-115(c).

## IV.    DISCUSSION

During Petitioner's parole revocation hearing, it was stated on the record that no formal declaration of delinquency had been issued. *See* Tenn. Comp. R. & Regs. 1100-01-01-.14(3)(a). Parole officer Mark Lindsey explained, "He was—when they issued the initial warrant, [Petitioner] was in custody [in California]. I don't know what happened . . . on the breakdown from there. So no delinquency was ever declared on him." Petitioner argues that, in parole revocation proceedings before the Board, a formal declaration of delinquency is a prerequisite to the removal of a parolee's street time.[6] He presses that the statutory provisions concerning parole "created a presumption that the Board will not remove time serve[d] on parole unless the director of parole has formally issue[d] a declaration, declaring the parolee delinquent on which date he/she will stop earning credit for service of the parolee's sentence from the date the warrant was issued until the removal of delinquency by the Board." In Petitioner's view, "there is no language in the statutes that authorizes a procedure permitting the Board to take street time without a declaration of delinquency being issued." The appellees' brief does not address Petitioner's specific argument. For the reasons set forth below, we are not persuaded by Petitioner's argument and find that the Board complied with state law and its own rules when it did not credit Petitioner's street time.

---

[6] Petitioner developed this specific argument for the first time on appeal. It was not "called to the attention of the trial judge." *See* Tenn. Ct. App. R. 6(a)(2) (each issue on appeal shall contain "[a] statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded."). Exercising our discretion, we will address the argument.

In his brief, Petitioner correctly states that "the Board has authority to determine how much time should be added back to a sentence when parole has been revoked." The parties agree that the following statutory and regulatory authorities apply:

When the director of probation and parole issues a warrant for the retaking of a parolee pursuant to § 40-28-607, the board is charged with determining whether violation of parole conditions exists in specific cases and of deciding the action to be taken in reference to the violation. Tenn. Code Ann. § 40-28-118(b); -122(a).

The board . . . may, if it sees fit . . . [f]or a revocation of parole that involves a new felony, . . . require the prisoner to serve out in prison the balance of the maximum term for which the prisoner was originally sentenced, calculated from the date of delinquency, or such part thereof, as the board may determine, or impose a punishment as the board deems proper, subject to § 40-28-123. Tenn. Code Ann. § 40-28-122(c)(1)(B).

Whenever there is reasonable cause to believe that a parolee has violated parole and a parole violation warrant has been issued, the director of probation and parole *may* declare the parolee to be delinquent and the parolee will stop earning credit for service of the parolee's sentence from the date the warrant was issued until the removal of delinquency by the board. Tenn. Code Ann. § 40-28-607(b) (emphasis added).

(3) Declaration of Delinquency.

(a) A declaration of delinquency *may be issued* by the Director of Probation and Parole, Field Services or designee, in revocation proceedings to suspend such credit toward the service of the offender's sentence. Such declaration shall be made by the Director or designee in any case when a parole violation warrant is issued, and the parolee is not in custody.

(b) Except when an offender is declared to be in a delinquent status, the time he or she is on parole is credited toward the service of his or her sentence *unless it is taken by the Board after a revocation of parole*.

(c) If delinquency is declared, the offender stops earning credit for the service of his or her sentence from the date of declaration, until the parole violation warrant is served and the offender is housed in a correctional facility in Tennessee. Offenders taken into custody in

another state will remain in delinquent status from the declaration of delinquency until they are returned to a Tennessee correctional facility or until delinquency is removed by the Board.

(d) During the revocation process, the Board may consider an alleged violation and determine either that parole should not be revoked or that mitigating or compelling circumstances exist for the violation. *The Board may then "take" or "grant" the delinquent time. Taking delinquent time requires that the offender lose credit toward service of sentence. The Board may take all of the delinquent time or some lesser amount of time, which is set by the Board.* Granting the delinquent time restores all of the offender's credit toward service of sentence as though delinquency had never been declared.

Tenn. Comp. R. & Regs. 1100-01-01-.14(3)(a)–(d) (emphasis added).

If the Board sustains the violation and decides to revoke parole, the offender shall be returned to confinement to serve the remaining portion of his or her sentence or such part as the Board directs. The time an inmate spent on parole shall not be considered as service of the sentence *unless the Board determines to grant all or part of such "street time" to the inmate.* Tenn. Comp. R. & Regs. 1100-01-01-.14(6)(m) (emphasis added).

If a person on parole from a prison, workhouse, or jail in this state is convicted of a crime under the law of another state or county which, if committed in this state, would be a felony, the Director of Probation and Parole in this state, shall seek to return such offender to this state through the terms of the interstate compact. If such offender is returned, the Board shall require that he or she serve the portion remaining of his or her maximum term of sentence or such part of that term as the Board may determine. Tenn. Comp. R. & Regs. 1100-01-01-.14(7)(b).

Petitioner has not identified, nor do we discern, any ambiguity in the authorities referenced above. When the language of a statute is clear and unambiguous, we need not look "beyond the plain language of the statute to determine its meaning." *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas & Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018). However, "because words are known by the company they keep, courts must also construe these words in the context in which they appear in the statute and in light of the statute's general purpose." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). The plain language within the applicable statutes and within the Board's rules states that a declaration of delinquency "may" be issued ahead of parole revocation proceedings, not that it is mandatory. *See* Tenn. Code Ann. § 40-28-607(b); Tenn. Comp. R. & Regs. 1100-

01-01-.14(3)(a). Studying the larger context indicates that the Board is vested with wide discretion in parole revocation proceedings generally, and also when deciding whether to credit time spent on parole toward the service of a parolee's sentence in any specific case. *See* Tenn. Code Ann. § 40-28-118(b); -122(a); *Wilhite v. Tennessee Bd. of Parole*, No. M2010-00857-COA-R3-CV, 2011 WL 198687, at \*2 (Tenn. Ct. App. Jan. 10, 2011) ("Decisions regarding parole are vested exclusively in the Board of Probation and Parole.").

Moreover, we cannot overlook the fact that Petitioner twice admitted during the parole revocation hearing that he was aware as early as 2010 that he was alleged to have violated the terms of his Tennessee parole. Petitioner repeatedly questions why he was not returned to Tennessee sooner by the appropriate authorities when the parole violation warrant was issued in 2007 and when he was released from the California prison in 2010. The record does not answer this question. Petitioner could have contacted the appropriate authorities in Tennessee to ascertain the status of any pending parole actions. The record shows that he did not do so and proceeded to relocate to Oregon where he incurred additional convictions and parole violations. Indeed, Petitioner did not comply with the conditions of his signed parole certificate, one of which required him to "report all arrests, including traffic violations, immediately, regardless of the outcome, to [his] Probation/Parole Officer."

In short, we have no legal basis to find that Petitioner is entitled to a "pass" for his admitted parole violations or to a credit of street time under the circumstances of this case. Based upon our thorough review of the record, the applicable statutes and regulations, and the deferential standard of review, we conclude that the Board did not exceed its jurisdiction, or act illegally, fraudulently, or arbitrarily when it revoked Petitioner's parole and did not credit his sentence with a portion of the time he was on parole. Thus, we affirm the trial court's decision.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court affirming the decision of the Tennessee Board of Parole. The case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, La Southaphanh.

_____
JOHN W. McCLARTY, JUDGE