IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 7, 2026 Session

## FRED AUSTON WORTMAN, III v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 15-02878      James Jones, Jr., Judge
_____

## No. W2025-00697-CCA-R3-PC
_____

The petitioner, Fred Auston Wortman, III, pled guilty to two counts of attempted first-degree murder and solicitation of first-degree murder, stemming from his repeated attempts to kill his wife. Pursuant to the plea agreement, the trial court imposed an effective Range II sentence of thirty years with a Range I release eligibility of thirty percent. The Board of Probation and Parole denied the petitioner release, and after challenging the denial via other avenues, the petitioner filed a petition for post-conviction relief in which he claimed entitlement to relief on grounds of breach of contact. In his petition, the petitioner claimed that the State violated the terms of his plea agreement by opposing his release at the parole hearing. The post-conviction court denied the petition, finding it was time-barred. However, this Court reversed and remanded with instructions for the post-conviction court to make findings relative to whether due process considerations tolled the statute of limitations. *See Wortman v. State*, No. W2023-00017-CCA-R3-PC, 2023 WL 6318088, at *1 (Tenn. Crim. App. Sept. 28, 2023). On remand, the post-conviction court -found the petitioner was not guaranteed release, that the State did not attempt to thwart the petitioner's ability to have a parole hearing, and rejected the petitioner's claim that the State "acted in bad faith by attending and opposing his parole" because the petitioner received the benefit of everything to which he bargained. Following a thorough review of the record, the briefs, and oral arguments of the parties, we affirm the judgment of the post-conviction court denying the petitioner post-conviction relief.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which MATTHEW J. WILSON, J., joined. CAMILLE R. MCMULLEN, J., concurring in results only.

W. Lewis Jenkins, Jr., Dyersburg, Tennessee, for the appellant, Fred Auston Wortman, III.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin L. Barker, Assistant Attorney General; Steve Mulroy, District Attorney General; and Sam Winnig, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On November 10, 2015, the petitioner, a practicing attorney until the time of his arrest, entered an *Alford*[1] plea to two counts of attempted first-degree murder and one count of solicitation of first-degree murder in exchange for a sentence of thirty years with release eligibility after service of 30 percent,[2] resolving cases against him in both Shelby and Fayette Counties. *See Wortman v. State*, 2023 WL 6318088, at *1. The charges arose out of the petitioner's "attempts to kill his then-wife by injecting poison into her toothpaste and soliciting her murder on multiple occasions." *Id.*

At the guilty plea hearing, the State announced, "All parties agree that Mr. Wortman is in fact a range one offender and on this indictment would face a maximum of 25 years confinement. However, in consideration of resolving all the cases for which his exposure is greater than 25 years, greater than 30 years, both parties are asking you to accept this 30-year sentence in this case."[3] The State then recited the facts giving rise to the petitioner's pleas as follows:

> The facts of this matter had it gone to trial was in February of 2015, Collierville detectives and later agents from the FBI were called to Cox Law Firm in Collierville, Tennessee, as they were alerted to computer files and computer searches performed by [the petitioner] regarding attempting to obtain hitmen and various poisons that he had searched on what's called the dark web.
>
> Officers mirrored the hard drive to that computer. They were able to reconstruct many of the internet searches that [the petitioner] performed.

---

[1] An *Alford* plea refers to a plea entered pursuant to *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), wherein the United States Supreme Court held that a criminal defendant may enter a guilty plea without admitting guilt if the defendant intelligently concludes that his best interests would be served by a plea of guilty.

[2] Thus, the petitioner's plea was a "*Hicks*" plea in that it provided for a hybrid sentence mixing Range II offender status with Range I release eligibility. *See Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997).

[3] The record on appeal does not include a transcript from the petitioner's Fayette County guilty plea hearing.

There were numerous searches in which he attempted to find hitmen. There were also numerous searches in which he researched various poisons. One of those poisons in particular that constituted a great deal of the internet searches was a poison called aconitum, A-C-O-N-I-T-U-M, which is a common poison known for a hundred years -- hundreds of years and is in fact a lethal poison.

When detectives became aware of these searches, they made contact with his wife Stac[i] Wortman. The two were in the process of getting a divorce. There were internet searches that they had found or files in those internet searches that had included a picture of Stac[i] Wortman. So they made contact with her.

When they told her generally about the activity that her husband, estranged husband had been engaged in, she immediately told officers about a unique experience that she had had in January about a month before, January 2015, in which she described using toothpaste in her home. Upon using the toothpaste had a burning sensation, a headache sensation. She compared it to maybe like a migraine that she had never suffered migraines before.

At the time she had written it off as a one-time occurrence or not knowing exactly what the cause was. When told about the searches on the internet however, that recalled her attention to that incident.

She had in fact retained that toothpaste and she turned it over to investigators who then sent that toothpaste to the [Tennessee Bureau of Investigation ("TBI")]. TBI then obtained various standards for poison, tested that toothpaste and found in it one of the very poisons that [the petitioner] had searched on the internet. In particular that poison I mentioned aconitum.

Some months later [the petitioner] was arrested, attempting to hire a hitman in what he believed to be a hitman in Fayette County. His meeting with that believed-to-be-hitman who was in fact a TBI agent was audio and video recorded. During that meeting he made mention of two things that would be relevant in this case. The first was that in the months before he had broken into the home of Ms. Wortman; and the second was that he had a bag that was placed behind the Wortman house, and in it had various instrumentalities that could be used to break into the home.

- 3 -

Also found in the bag was an unused syringe that was still in its packaging so it had in fact not been used. There could be an inference that in fact he had delivered that aconitum to the toothpaste by use of some type of syringe.

On September 19, 2019, a parole hearing was held in the petitioner's case. The transcript from the parole hearing reflects that the petitioner admitted he poisoned his wife's toothpaste and attempted to hire someone to kill his wife. The alleged hitman turned out to be an undercover TBI agent. With regard to the third offense to which he pled guilty, the petitioner claimed that he was approached in jail by another inmate who said "he could make problems disappear. And I basically fell in with what he was saying."

The transcript also reflects that four individuals spoke in favor of parole, and thereafter, four individuals spoke in opposition of parole. In opposition, the Fayette County prosecutor stated that he "strongly oppose[d]" the petitioner's being paroled. He stated that he had spoken with officials from the TBI and that the agency "strongly oppose[d] parole" for the petitioner. He also noted that the petitioner expressed "zero acceptance of responsibility for his crimes," "zero remorse," and "pose[d] a clear and present danger" to the victim. The Fayette County prosecutor acknowledged that rehabilitation was one purpose of incarceration but asserted that the additional purposes of retribution, deterrence, and "incapacitat[ion] [of] . . . a clear and present danger" would be served by the denial of parole. The Fayette County prosecutor then went on to summarize relevant facts from the case, asserting that the petitioner had "left out several relevant facts" during his discussion with the Board.

The Shelby County prosecutor also spoke in opposition of the petitioner's being paroled, explaining that the victim, the victim's family, and the Shelby County District Attorney General had asked him to attend the hearing and "strongly oppose parole." The Shelby County prosecutor commented that this "is an exceptional case," summarizing that the petitioner "tried to poison his wife, exposed his younger daughter to the poison, had a kit hidden behind the backyard with poison and a syringe in it." The Shelby County prosecutor then continued:

He solicited not just one but three different hit men to kill his wife, including, for all he knew, a hit man to come into the home. The kids' bedroom is right there next to where this victim sleeps. He loved his kids so much he tried to kill her three separate times. Wrong decisions? . . . [I]t's a shame that we're even talking about parole.

And then I heard somebody say he's not supposed to be there in the prison. Well, you know who's not supposed to be here? [The victim] is not

supposed to be here. She's supposed to be in the ground, dead. And he tried at least four times to put her there.

We shouldn't be talking about parole. We should be talking about him serving every day of this sentence. I believe that's justice, and I believe that's what he has earned.

The Shelby County District Attorney General submitted a letter for consideration at the parole hearing in which she expressed that she was

adamantly opposed to Early Release at any time for the Defendant Auston Wortman. The facts and circumstances of his sustained deliberate and cruel actions have left such an unmitigated impression on this office that I feel compelled to send this letter for its inclusion in the file and for its consideration whenever, 10 years from now or 30 years from now, such becomes relevant.

. . . .

His sustained, deliberate evil conduct must never be forgotten or minimized. [The petitioner] pled guilty to three sentences, 30 years, 30 years and 8 years. But please do not treat this [petitioner] as one with a typical "parole-able" sentence – this is a [petitioner] who had every opportunity in life and nevertheless chose, and chose, and chose, and chose to try and kill his wife and leave his kids without a mother. He even put the kids in deadly harm's way. In Tennessee law, an attempted murder is parole eligible, but in this [petitioner's]'s cases, a grant of parole at any time would be contrary to all sense and principle of justice.

The petitioner was denied parole following the hearing. Thereafter, he pursued relief via an administrative appeal, a writ of certiorari in the Davidson County Chancery Court, and the Tennessee Court of Appeals, all of which denied relief. *See Wortman v. State of Tennessee, Tennessee Board of Parole, et al.*, 2021 WL 5174701, at *1-*2 (Tenn. Ct. App. Nov. 8, 2021), *perm. app. denied* (Tenn. Mar. 24, 2022). The Tennessee Supreme Court denied the petitioner's application for permission to appeal. As discussed *supra,* the petitioner filed a pro se petition for post-conviction relief. In his petition, the petitioner claimed that the State violated the terms of his plea agreement by opposing his release at the parole hearing. The post-conviction court denied the petition, finding it was time-barred. However, this Court reversed and remanded with instructions for the post-conviction court to make findings relative to whether due process considerations tolled the statute of limitations. *See Wortman v. State*, 2023 WL 6318088, at *1.

Upon remand, the post-conviction court conducted a hearing on March 13, 2025, at which Shelby County Deputy District Attorney General Paul Hagerman was the first to testify. General Hagerman recalled that the charges against the petitioner were ultimately resolved with the petitioner's entrance of guilty pleas for an effective sentence of thirty years with a release eligibility of 30 percent. General Hagerman maintained that no part of the plea agreement involved the State agreeing not to oppose parole at a later parole hearing. More, specifically, General Hagerman stated,

> [t]here was absolutely no agreement that [the petitioner] would necessarily be paroled after 30 percent or anything like that. That's not something that we would ever – that we were even able to agree to. And there was absolutely no agreement that we or [the Fayette County District Attorney] would not oppose [the petitioner's] parole or anything like that.

On cross-examination, General Hagerman acknowledged that he was aware of the nature of the petitioner's offenses before entering into a plea agreement.

The petitioner testified that his attorneys negotiated with the State as to the contents of the plea agreement, and the terms were memorialized in a memorandum of understanding and in the plea itself. The petitioner believed the parole hearing was a "perfunctory step [and] that [he] would be released on parole at that time[.] . . . [T]hat was a reasonable expectation after going through all that torturous negotiation of the plea."

The petitioner stated that he filed his petition for post-conviction relief after the Tennessee Supreme Court denied his application for permission to appeal the denial of parole. He did not believe he had a cause of action until the parole denial had been finally adjudicated. The petitioner represented himself in the parole-related proceedings.

On cross-examination, the petitioner acknowledged that he entered his guilty pleas under *Alford* and did not admit to any of the actions the State claimed he committed against his then-wife. Asked whether he then admitted to his criminal conduct at the parole hearing as illustrated by the transcript from the hearing, the petitioner claimed that the "transcriptionist misquoted or misstated [him]" or that he was answering the hearing officer's questions not admitting to the conduct. The petitioner denied offering another inmate $10,000 cash and his University of Tennessee championship ring to kill his wife.

The petitioner maintained that the language in the memorandum of understanding, "By these guilty plea[s], the State and the defendant intend the finality in these matters," meant that the State was "done with this matter completely" and would not attend any

parole hearings. The petitioner asserted that he thought release eligibility meant release entitlement.

Staci Jones, the petitioner's ex-wife and victim in these cases, testified that she attended the 2019 parole hearing to oppose the petitioner's release not because the State directed her to but because she was opposed to any release of the petitioner. She said that she and her family would attend and "do what we need to do" at any future parole hearing because they continue to fear what the petitioner might do to her if released.

On May 8, 2025, the post-conviction court conducted a hearing to pronounce its findings and issued a written order to the same effect. The court observed from the evidentiary hearing that the petitioner was intelligent, attentive, and "focused on every word said to him and answered very carefully as to convey only that which he wanted." The court found that the petitioner understood the terms of his plea and was "now simply attempting to manipulate the process to his advantage." From reviewing the record, the court found that the agreement was that the petitioner would be eligible for release after the completion of 30 percent of his sentence, not that he was guaranteed release, and that the State did not attempt to thwart the petitioner's ability to have a parole hearing, which was "the agreed upon term." The court rejected the petitioner's claim that the State "acted in bad faith by attending and opposing his parole" because the petitioner received the benefit of everything to which he bargained.

At the conclusion of its oral findings, the post-conviction court recounted:

I believe it was stated during the hearing, but the Court didn't make a formal finding on it, the Court had previously had denied the petition without a hearing based off of the statute of limitation. I note during the – the Court of Appeals had remanded for a findings of fact with regard to the toll of the statute. I know during the hearing the State did not oppose going forward on that so the Court did not readdress the issue of the statute of limitations and just will show that issue moot and just proceed with the . . . other findings.

In its written order, the post-conviction court observed:

This Court had previously denied this petition as being barred by the statute of limitations. The Court of Criminal Appeals reversed and remanded for a findings of fact concerning the tolling of the statute of limitation issue. Upon return, the State conceded the issue and agreed to proceed with the petition on its merits. Therefore, this Court accepts the petitioner's claim as timely and proceeds on the petition's merits.

- 7 -

The petitioner appealed the denial of his petition.

*Analysis*

On appeal, the petitioner argues that he is entitled to post-conviction relief because a plea agreement is contractual in nature, and the State breached its terms by not acting in good faith and fair dealing in arguing against his release on parole. The State responds that the petition should be dismissed as untimely and that the petitioner did not establish he was entitled to due process tolling. Untimeliness notwithstanding, the State asserts that it did not breach the terms of the plea agreement because release eligibility does not equate to release entitlement and the "State's position on [the] [p]etitioner's release at a future parole hearing was never part of the plea agreement[.]" We agree with the State.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of the post-conviction court's conclusions of law and application of the law to factual findings are reviewed *de novo* with no presumption of correctness. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

## Untimeliness:

A post-conviction petitioner has one year from "the date of the final action of the highest state appellate court to which an appeal is taken" in which to file a petition for post-conviction relief. Tenn. Code Ann. § 40-30-102(a). "Time is of the essence of the right to file a petition for post-conviction relief." *Id.* An untimely filing of a post-conviction petition extinguishes a petitioner's post-conviction claims. *Id.* "[A] judgment of conviction entered upon a guilty plea becomes final thirty days after acceptance of the plea agreement and imposition of sentence." *State v. Green*, 106 S.W.3d 646, 650 (Tenn. 2003). Here, the petitioner's guilty plea was entered and his sentence was imposed on November 10, 2015. Therefore, the petitioner's judgment became final on December 9, 2015. Yet, the petitioner did not file the instant petition seeking post-conviction relief until December 2, 2022, over six years after his judgment of conviction had become final.

While the Act provides for a limited, delineated set of statutory exemptions, none of which are applicable here, the Tennessee Supreme Court has enumerated three situations in which due process tolls the statute of limitations and allows for the consideration of an untimely post-conviction petition. To qualify, a petitioner's circumstances must involve (1) claims for relief that arise after the statute of limitations has expired, (2) mental incompetence preventing a petitioner from complying with statutory deadlines, or (3) attorney misconduct. *See Williams v. State*, 44 S.W.3d 464, 468 (Tenn. 2001); *Seals v. State*, 23 S.W.3d 272, 277-80 (Tenn. 2000).

"[A] post-conviction petitioner is entitled to due process tolling of the one-year statute of limitations upon a showing (1) that he or she has been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing." *Bush v. State*, 428 S.W.3d 1, 22 (Tenn. 2014) (citing *Whitehead v. State*, 402 S.W.3d 615, 631 (Tenn. 2013)). Our supreme court has stressed that due process tolling "'must be reserved for those rare instances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Id.* (quoting *Whitehead*, 402 S.W.3d at 631-32).

The petitioner pled guilty in November 2015. The petitioner's initial parole hearing was conducted on September 19, 2019, and the petitioner was sent written notice of its denial on October 7, 2019. The petitioner took varied actions challenging the denial of parole, culminating in a final denial of permission to appeal by the Tennessee Supreme Court on March 24, 2022. Approximately nine months later, the petitioner filed this petition for post-conviction relief.

After ruling on the merits of the petition, the post-conviction court stated that the State had "conceded the [timeliness] issue and agreed to proceed with the petition on the merits." On appeal, the State disputes that it conceded the timeliness issue, and we find no evidence of a concession in the record.

It is apparent that the petitioner's claim for relief did not arise until State representatives testified at the parole hearing in September 2019 and is, thus, "later arising." Though the petitioner seems to vacillate between the arguments that he was guaranteed release after serving 30 percent of his sentence (a claim that would not be "later arising because it existed at the time of his plea, *see generally Cox v. State*, No. 02C01-9508-CR-00221, 1997 WL 284713, at *1 (Tenn. Crim. App. May 30, 1997)) and that the State's breached its contract and opposed his release despite being a good candidate for it, the overarching claim throughout the petitioner's brief centers on the breach of contract. Therefore, because this alleged breach did not occur until the parole hearing, the petitioner's claim would qualify as a "later arising" claim.

However, due process tolling is not warranted because the petitioner has not been "pursuing his rights diligently" with regard to his post-conviction claim. While the petitioner maintains that he filed his petition "within a reasonable time after his other options for addressing the denial of his parole had been exhausted," all of the actions taken after the denial of parole challenged the denial of parole. Furthermore, even if one argued that because the petitioner raised the breach of contract claim in his petition for writ of certiorari to the Court of Appeals, we conclude, based on the unique facts of the instant case, that such an appeal does not constitute diligent pursuit of the claim. While the petitioner was acting pro se in his appeal of the denial of his parole request, the petitioner is a lawyer, and as such, according to the Rules of Professional conduct, he is considered "an expert in the law" who has "knowledge of the law, [and] skill in applying the applicable law to the factual context. . . ." Tenn. Sup. Ct. R. 8, Preamble; *see also Stark v. City of Memphis*, No. 219-CV-02396-JTP-TMP, 2021 WL 11747726, *4 n. 7 (W.D. Tenn July 16, 2021) (citing preamble to presume a lawyer would not file a frivolous claim). As an "expert in the law," the petitioner knew that parole is a "privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that the prisoner, if released, will live and remain at liberty without violating the law, and that the prisoner's release is not incompatible with the welfare of society." Tenn. Code Ann. § 40-28-117. The petitioner would have also known that

> judicial review of a parole decision made by the Board is narrow; it is limited to consideration of whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. Tenn. Code Ann. § 27-8-101; *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012); *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). The reviewing court does not inquire into the intrinsic correctness of the Board's decision, reweigh the evidence, or substitute its judgment for that of the Board. *State v. Lane*, 254 S.W.3d 349, 355 (Tenn. 2008); *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001). The court considers only the manner in which the decision was made. *Stewart*, 368 S.W.3d at 463 (citing *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994)).

*Wortman v. State*, No. M2021-00068-COA-R3-CV, 2021 WL 5174701, at *7 (Tenn. Ct. App. Nov. 8, 2021). Thus, the breach of contract question is not an issue that the Parole Board or the Court of Appeals could consider.

Furthermore, the petitioner was a licensed attorney who personally negotiated a legally complex, multi-jurisdictional plea agreement spanning two separate criminal jurisdictions. At the post-conviction hearing, he demonstrated the ability to parse contractual language, track evidentiary relevance, and cite court rules from memory. The post-conviction court found him to be intelligent, attentive, and methodical in his use of language. Over the three years following the denial of parole, he filed five separate pro se legal submissions across four different courts and forums, including a civil action in a separate jurisdiction raising the same underlying conduct. *See Wortman v. State of Tennessee Board of Parole*, No. 20-5718, 2021 WL 9528123 (6th Cir. Sept. 23, 2021); *Wortman v. Shirkey*, 708 S.W.3d 547 (Tenn. Ct. App. 2004); *Wortman v. State of Tennessee Board of Parole*, No. M2020-01554-COA-R3-CV, 2021 WL 4144043 (Tenn. Ct. App. Sept. 13, 2021); *Wortman v. State of Tennessee Board of Parole,* 2021 WL 5174701; *Wortman v. State*, 2023 WL 6318088. Accordingly, the record does not support the conclusion that this petitioner lacked the legal sophistication to identify the alleged breach-of-contract claim at or shortly after the September 2019 parole hearing. His failure to timely pursue that claim in the appropriate forum was not the product of ignorance. It was a choice, and that choice does not entitle him to equitable tolling of the statute of limitations.

Finally, while the Court of Appeals acknowledged the petitioner's claim for breach of contract, they noted that the petitioner presented no evidence of an agreement between himself and the State and focused majority of their passing comments on the fact that release eligibility is not guaranteed—an issue which would be proper for review of a Parole Board denial. *Id.* at *10. Based on the foregoing, we conclude that the petitioner, a lawyer skilled in his knowledge of the law, did not diligently pursue his breach of contract claim in such a manner that should allow for the tolling of the statute of limitations.

The petitioner relies heavily on *Foley v. State*, No. M2025-00311-CCA-R3-PC, 2016 WL 245857 (Tenn. Crim. App. Jan. 20, 2016), a case in which this Court determined that due process tolled the statute of limitations. *Id. at *8.* In *Foley*, the petitioner pled guilty to facilitation of especially aggravated kidnapping, and the prosecutor commented on the specifics of the negotiated agreement at the plea hearing that it was a "major benefit" to the petitioner that he would not be placed on the sex offender registry. *Id.* at *1. The sex offender registry law changed, and the offense to which the petitioner pled became an offense requiring registry and the State attempted to enforce the requirement against him. *Id.* at *1-*3. We view *Foley* as distinguishable from the present case in two crucial ways: First, in *Foley*, the prosecutor explicitly stated at the plea hearing that a "major benefit" of the petitioner pleading was that he would not have to register as a sex offender, and the petitioner testified at the evidentiary hearing that he would not have entered into the agreement had he known he would be required to register. *See Id.*, at *6. . Whereas, in this case, there was no explicit statement or provision surrounding the guilty plea that the

State would not speak out against the petitioner's being paroled. Second, the interim actions taken by the *Foley* petitioner were all challenging the same issue that was ultimately raised in his post-conviction petition - his placement on the sex offender registry. *Id.*, at *8. Whereas, here, as detailed above, the petitioner's interim actions all challenged the denial of parole. Accordingly, we are unpersuaded by *Foley's* applicability in this case and determine that the post-conviction petition was untimely and that due process considerations do not require tolling of the statute of limitations.

## Breach of Contract:

In the event of further appellate review, we will address the merits of the petitioner's petition.

"Plea agreements . . . are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." *State v. Mellon*, 118 S.W.3d 340, 346 (Tenn. 2003) (quotations omitted). The courts of this state apply principles of contract law to construe a plea agreement and determine the appropriate remedy for its breach. *Id.* The State's breach of a plea agreement may be a ground for post-conviction relief. *See Avila-Salazar v. State*, 2022 WL 1415709, at *8 (Tenn. Crim. App. May 4, 2022) (citing *Harris v. State*, 875 S.W.2d 662 (Tenn. 1994)), *perm. app. denied* (Tenn. Oct. 19, 2022); *Cox v. State*, 1997 WL 284713, at *1 (Tenn. Crim. App. May 30, 1997) (citing *Brown v. State*, 928 S.W.2d 453 (Tenn. Crim. App. 1996); *Templeton v. State*, 1995 WL 2995, at *1 (Tenn. Crim. App. Jan. 5, 1995)).

Again, the petitioner argues that he is entitled to post-conviction relief because a plea agreement is contractual in nature, and the State breached its terms by not acting in good faith and fair dealing in arguing against his release on parole. Citing *Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006), for the proposition that "[t]he covenant imposes a duty on the contracting parties to do nothing that will impair or destroy the rights of the other party to receive the benefits of the contract," the petitioner asserts that the State was bound not to act in a way to undermine the benefit of the bargain he struck. The petitioner seemingly extrapolates that an agreed upon term of his plea was that the State would not speak out against his release.

The petitioner puts much emphasis on the fact that his pleas were *Alford* and *Hicks* pleas as though this somehow allows terms to be read into the plea agreement that were not there. In reviewing the transcript of the guilty plea, the plea agreement, and the "memorandum of understanding clarifying terms of guilty plea," as well as the testimony at the post-conviction hearing, it is clear that the State's agreement with the petitioner was that the petitioner would be eligible for parole after service of 30 percent of thirty years, not that the petitioner would be granted parole or that the State would not oppose  the

- 12 -

petitioner's request for parole. Release eligibility does not equate to release entitlement, *see Shorts v. Bartholomew*, 278 S.W.3d 268, 278 (Tenn. 2009) (stating that "[e]arly release for these prisoners is not automatic; rather, whether an inmate who becomes eligible for parole is actually released on parole is a decision entrusted to the sole discretion of the TBPP, an entity independent of the TDOC"). [A] sentence does not expire merely because the release eligibility date has been reached. *Wortman v. State*, 2021 WL 5174701, at *10 (Tenn. Ct. App. Nov. 8, 2021) (citing *Davis [v. State]*, 313 S.W.3d [751] at 758 [Tenn. 2010] ("[P]arole does not actually reduce the parolee's sentence."); *Lawrence Allen Hodge v. David Mills, Warden*, No. W2004-01107-CCA-R3-HC, 2004 WL 2866970, at *1 (Tenn. Crim. App. Dec. 13, 2004) ("Parole does not cause the sentence to expire or terminate, but is merely a conditional release from confinement.")); *Roberts v. Minter*, No. W2017-01944-CCA-R3-HC, 2018 WL 1603062, at *2 (Tenn. Crim. App. Mar. 29, 2018), *no appl. perm. appeal filed.* "A prisoner has no absolute right to be released on parole, even though he has a clean conduct record, and has served the minimum term for his offense." *Id.* (citing *Robinson v. Traughber*, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999) (citing *Graham v. State*, 202 Tenn. 423, 304 S.W.2d 622 (1957)). A prisoner is not entitled to immediate release upon reaching his or her minimum date for parole eligibility. *See Rice v. Lebo*, No. W2019-01753-CCA-R3-HC, 2020 WL 1623744, at *2 (Tenn. Crim. App. Apr. 2, 2020), *R. 11 appl. perm. appeal denied July 23, 2020.* The petitioner's argument that he was *guaranteed* release on parole upon completing 30% of his sentence based on an agreement with the State is unsupported by the facts or the law. Furthermore, the State did nothing to impinge on the petitioner's having a parole hearing which is all he is entitled to.[4]

The petitioner counters that the State attempted to undermine its agreement with him by arguing or "screaming loudly" against his receiving parole. However, considering the petitioner's legal education, background and representation by two attorneys at the guilty plea, the petitioner's repeated acknowledgment that he understood the terms of his plea "carr[ies] a strong presumption of verity." *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). As observed by the post-conviction court, the record indicates that the petitioner "understood what the terms were of his plea and is now simply attempting to manipulate the process to his advantage."

In ruling on the petition, the post-conviction court succinctly summarized:

> The petitioner and the State of Tennessee agree[d] that the petitioner would receive a sentence of 30 years. The petitioner received that benefit. The petitioner and the State of Tennessee agree[d] that the petitioner would

---

[4] Technically, the petitioner's receipt of a parole hearing in September 2019 was approximately 5 years before service of 30 percent.

have both the Shelby County and Fayette County sentences run concurrent to each other. The petitioner received that benefit. The petitioner and the State of Tennessee agreed that the petitioner would have a release eligibility after 30 percent of service of his sentence, and the petitioner received that benefit and went before the parole board for a determination on his possible release. . . .

Here, the [petitioner] became eligible for release after completing a percentage of his sentence. The petitioner received that benefit. The State at no point attempted to thwart the ability to have a parole hearing by the [petitioner], which was the agreed upon term, not the release of the [petitioner]. The State opposing the [petitioner]'s release at a parole hearing is a common occurrence, but no evidence was presented that the State denied or even attempted to deny the petitioner the opportunity to have a hearing to determine his release, which in this [c]ourt's opinion was the agreed upon term. Therefore, this [c]ourt . . . find[s] that the State has not breached their agreement and denies the petition on this ground.

Simply put, the petitioner received the benefit of the bargain he struck, consideration for release. The fact that the State argued against the petitioner receiving parole does not negate the fact that the petitioner received a parole hearing and was considered for release. The petitioner is not entitled to relief on his post-conviction claim.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the post-conviction court's denial of the petition.

s/ *J. ROSS DYER*
J. ROSS DYER, JUDGE

- 14 -